COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys, Petty, Beales, Alston, Huff, Chafin, O'Brien, Russell, AtLee and Malveaux
Argued at Richmond, Virginia

**PUBLISHED**

DUSTIN SCOTT JONES

v.     Record No. 1764-16-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MAY 7, 2019

UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Aaron M. Vandenbrook, Assistant Public Defender (Shaun R. Huband, Deputy Public Defender, on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

This appeal permits us to review and clarify our jurisprudence with respect to the quantum of evidence sufficient to constitute an attempt to commit a crime in the Commonwealth.

On June 28, 2016, appellant Dustin Scott Jones ("Jones") was convicted by the Circuit Court of the City of Petersburg (the "circuit court") of conspiracy to commit robbery,[1] attempted robbery, and use of a firearm in the commission of attempted robbery. Jones argued on appeal that the evidence did not prove attempted robbery because the evidence did not establish that he

---

[1] The record reflects that Jones was indicted for conspiracy to commit robbery, and although he does not contest his conviction for that offense, we also note that the final judgment order of the circuit court reflects that Jones was convicted of robbery, not conspiracy to commit robbery. Although the sentencing order reflects that he was sentenced for conspiracy to commit robbery, we will remand this case and direct the circuit court to correct any clerical errors in these orders.

performed an overt act in furtherance of the intended robbery. Jones also contended that the evidence was insufficient to sustain his conviction for use of a firearm.[2] A three-judge panel of this Court agreed with Jones and reversed and dismissed both of his convictions in an unpublished opinion. On October 30, 2018, we granted the Commonwealth's petition for a rehearing *en banc*.

## I. BACKGROUND

At approximately 5:45 a.m. on October 6, 2015, Petersburg Police Officers Binford and Seabridge observed a white Mercedes drive into the parking lot of a housing complex that they had under observation. Officers Binford and Seabridge were in full uniform but driving in an unmarked pickup truck. The officers then observed a man exit the white Mercedes and walk across the street. A few minutes later, two other men, who were later identified as Jones and Phillip Boyce ("Boyce"), exited the white Mercedes and "adjust[ed]" their clothing for four or five minutes before starting to cross the street in the same direction that the first man had gone.

Officers Binford and Seabridge followed Jones and Boyce to an alley between two residences. They witnessed Jones and Boyce at the corner behind one of the houses, but not near the door. When Jones and Boyce saw the police officers, Jones and Boyce started to walk down the alley toward the street. Officers Binford and Seabridge subsequently exited their truck and identified themselves. At that point, Boyce stopped walking and Jones fled. Officer Seabridge witnessed Jones run in and out of a fenced parking lot before returning to the white Mercedes. Officer Seabridge then saw Jones get in the white Mercedes and drive away.

---

[2] Specifically, Jones phrases his two assignments of error as follows: 1) "The evidence was insufficient to prove that appellant attempted to commit robbery . . . . As the use of a firearm charge is dependent upon the attempted robbery conviction, the use of a firearm charge should be dismissed as well[;]" and 2) "[t]he evidence was insufficient to prove that appellant used a firearm in the commission of attempted robbery."

Another police officer conducted a traffic stop on the white Mercedes and apprehended Jones a short time later. After responding to the site of the traffic stop, Officer Seabridge searched the white Mercedes and recovered a yellow bag with a ski mask. Officer Seabridge also located another ski mask in a street that Jones had travelled before Jones was stopped. Several hours later, in response to a telephone call, Officer Seabridge searched the fenced-in area where he previously witnessed Jones running and found a sawed-off shotgun under a bush.

Detective Thomas Ewers interviewed Jones after his arrest. During the interview, Jones gave conflicting statements about the incident but eventually admitted that he and Boyce went to the housing complex to "make sure Trip didn't get hurt." Jones explained that "Trip," the third person from the white Mercedes, had intended to rob a known drug dealer, Austin Strickland ("Strickland"). At the subsequent bench trial, neither party presented evidence regarding where Strickland lived.

The circuit court determined that Jones's statement to the police that he accompanied Trip to protect him during the planned robbery made Jones "part of the robbery." Therefore, in addition to finding Jones guilty of conspiracy to commit robbery, the circuit court also found Jones guilty of attempted robbery and use of a firearm in the commission of attempted robbery. On October 25, 2016, the circuit court sentenced Jones to a total of twenty-three years in prison, with twenty years suspended.

## II. ANALYSIS

### A. Standard of Review

When presented on appeal with a challenge to the sufficiency of the evidence, an appellate court reviews the evidence in the "light most favorable" to the prevailing party at trial, in this case, the Commonwealth. See Commonwealth v. Hudson, 265 Va. 505, 514 (2003) (citation omitted); see also Sullivan v. Commonwealth, 280 Va. 672, 676 (2010) (emphasizing

- 3 -

that this deferential standard applies "to any reasonable and justified inferences the fact-finder may have drawn from the facts proved").  "Viewing the record through this evidentiary prism requires [an appellate court] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  Bowman v. Commonwealth, 290 Va. 492, 494 (2015) (quoting Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015)).

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."  Bolden v. Commonwealth, 275 Va. 144, 148 (2008) (citing Coles v. Commonwealth, 270 Va. 585, 587 (2005); Burns v. Commonwealth, 261 Va. 307, 337 (2001)).  The issue on appeal is "whether the record contains evidence from which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Young v. Commonwealth, 275 Va. 587, 591 (2008) (citation and internal quotation marks omitted).

### B.  The Court of Appeals Panel Opinion

On October 2, 2018, a three-judge panel of this Court reversed and dismissed Jones's conviction for attempted robbery and his related conviction for the use of a firearm in the commission of a felony.  Regarding Jones's conviction for attempted robbery, the panel cited our decision in Rogers v. Commonwealth, 55 Va. App. 20 (2009), which articulated the well-established precedent that "[a]n attempt in criminal law is an unfinished crime and is composed of two elements, the intent to commit the crime and the doing of some direct [or overt] act toward its consummation, but falling short of the accomplishment of the ultimate design."  Id. at 24-25.  Mindful of Rogers, the panel found that the evidence was sufficient to establish Jones's intent to commit robbery.  However, it also concluded that the evidence did not show that Jones committed a direct or overt act in furtherance of that intent.

The panel noted that this Court's decision in Hopson v. Commonwealth, 15 Va. App. 749 (1993), and its companion case, Jordan v. Commonwealth, 15 Va. App. 759 (1993), controlled its judgment. Those cases involved co-defendants whose convictions for attempted robbery were reversed on appeal. More importantly, however, Hopson and Jordan grappled with the legal point of when preparation to commit a robbery becomes an attempt to commit that crime, and thus when criminality attaches.

Hopson and Jordan concerned a situation in which police officers witnessed two men, later identified as Hopson and Jordan, outside a store "behaving suspiciously and repeatedly peeking around the corner of the building." Hopson, 15 Va. App. at 752. The evidence also revealed that Jordan wielded a pistol and that Hopson was wearing a mask that covered his face. Id. Further, "[o]n several occasions, apparently to reconnoiter it, Jordan entered the store." Id. When the police officers approached Hopson and Jordan, "both men quickly tried to leave the premises[,] . . . failed to stop at the officers' command and were detained forcibly." Id.

While both Hopson and Jordan were arrested and convicted of attempted robbery, this Court reversed their convictions on appeal. As this Court explained, the evidence only proved that Hopson and Jordan intended to rob the store. Id. We also noted, however, that the evidence was not sufficient to prove the second element of attempted robbery: "[A]n overt, ineffectual act which 'must go beyond mere preparation and be done to produce the intended result.'" Id. (quoting Tharrington v. Commonwealth, 2 Va. App. 491, 494 (1986)). More specifically, we determined that neither Hopson nor Jordan entered the store or attempted to enter the store with the purpose of initiating the planned robbery. Id. The Hopson/Jordan Court found that, given the particular facts of the case,

> Hopson and Jordan committed no act directed toward the consummation of a robbery. Rather, the evidence discloses nothing more than preparation to commit the crime. They remained behind and beside the store and made no move toward

the door. They peeked around the corner several times, an action
consistent only with scouting the store. Neither man made any
move toward realizing the ultimate purpose of robbery.

Id. Therefore, we held that the evidence was "consistent only with scouting the store" but did

not demonstrate an overt act necessary to support Hopson or Jordan's convictions for attempted

robbery. Id.; see also Jordan, 15 Va. App. at 762 ("They were diverted from their purpose before

they committed any act toward its accomplishment.").

Applying Hopson and Jordan to the facts of this case, the panel found that "the evidence

did not prove that [Jones] had begun the actual robbery or that its execution was otherwise

imminent." The panel reached this conclusion by noting that the Commonwealth did not present

evidence that Strickland, the intended victim of the thwarted robbery, lived in the area where

Officers Binford and Seabridge encountered Jones and his co-conspirators. Thus, the panel

concluded that "the evidence showed only some possible preparation for the intended crime,

rather than any overt act." Officers Binford and Seabridge "intervened before the intended

robbery occurred."

Finding that the evidence did not establish the second element of an attempt to commit

offense, an overt act in furtherance of criminal intent, the panel reversed and dismissed Jones's

attempted robbery conviction. As a necessary consequence, the panel also reversed and

dismissed Jones's related conviction for use of a firearm.

### C. The Elements of Attempted Robbery

In resolving the issues before us, we think it important to undertake a thorough review of

the Commonwealth's jurisprudence with respect to the attempted commission of a crime,

including our prior precedent on this subject.

"The crime of robbery in Virginia is not defined by statute." Johnson v. Commonwealth,

209 Va. 291, 293 (1968). "Consequently, we look to the common law for its definition." Pierce

- 6 -

v. Commonwealth, 205 Va. 528, 532 (1964) (citing Fleming v. Commonwealth, 170 Va. 636, 639 (1938); Butts v. Commonwealth, 145 Va. 800, 811 (1926)).  The common law defines robbery as the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Jay v. Commonwealth, 275 Va. 510, 524 (2008) (citations omitted).

Similarly, what constitutes an attempt must also be ascertained from the common law.[3] See Johnson, 209 Va. at 293.  The English common law doctrine of criminal attempt can be traced back to the eighteenth century.[4]  Over time, however, courts have blurred the line between mere preparation to commit a crime and the type of act sufficient to establish an attempted offense.  This is, at least in part, a consequence of courts throughout the nation utilizing a wide and not entirely consistent variety of phrases to describe the type of act required.  These phrases include a "step toward the commission of the crime," an "act in part execution of the intent," a "direct movement toward the commission of the offense," an "act in furtherance of the crime," a "substantial step toward the commission of the offense," and "some appreciable fragment of the crime."  Wayne R. LaFave, Criminal Law § 11.4 (5th ed. 2010) (citations omitted).

Even so, the common law generally informs us that "to constitute an act of attempt, the act must possess four characteristics: first, it must be a step toward a punishable offense; second,

---

[3] "Much has been written on the law of attempts to commit crimes and much more will be written for this is one of the most interesting and difficult problems of the criminal law." Edwin R. Keedy, Criminal Attempts at Common Law, 102 U. Pa. L. Rev. 464, 464 (1954) (citing, among other works, John S. Strahorn, Jr., Preparation for Crime as a Criminal Attempt, 1 Wash. & Lee L. Rev. 1 (1939); Thurman W. Arnold, Criminal Attempts-the Rise and Fall of an Abstraction, 40 Yale L.J. 53 (1930); Francis Bowes Sayre, Criminal Attempts, 41 Harv. L. Rev. 821 (1928); Leon A. Tulin, The Role of Penalties in Criminal Law, 37 Yale L.J. 1048 (1928); Walter Wheeler Cook, Act, Intention, and Motive in the Criminal Law, 26 Yale L.J. 645 (1917)).

[4] See Wayne R. LaFave, Criminal Law § 11.2 (5th ed. 2010) (discussing Rex v. Scofield, Cald. 397 (1784), which rejected a defendant's argument that an attempt to commit a crime was not a crime and held that "[t]he intent may make an act, innocent in itself, criminal; nor is the completion of an act, criminal in itself, necessary to constitute criminality").

it must be apparently (but not necessarily in reality) adapted to the purpose intended; third, it must come dangerously near to success; fourth, it must not succeed." J. H. Beale, Jr., Criminal Attempts, 16 Harv. L. Rev. 491, 492 (1903). This case, as well as Hopson and Jordan, focuses on the third of these characteristics. However, how near to success any effort to commit a crime must come before criminality attaches is obviously a question to be determined in each case upon the specific facts of the case and the elements of the intended crime. In an attempt to find a legal test to satisfy this question, most courts and commentators on the subject agree with Justice Oliver Wendell Holmes, Jr.'s observation that "[a]s the aim of the law is not to punish sins, but is to prevent certain external results, the act done must come pretty near to accomplishing that result before the law will notice it." Commonwealth v. Kennedy, 170 Mass. 18, 20 (1897).

With these principles in mind, it follows that to convict a defendant of attempted robbery,

> the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation. Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a *direct*, but ineffectual, act *to accomplish the crime*.

Pitt v. Commonwealth, 260 Va. 692, 695 (2000) (emphasis added) (citing Johnson, 209 Va. at 293).

The direct but ineffectual act is commonly referred to as an "overt act." Jay, 275 Va. at 525 (citing Sizemore v. Commonwealth, 218 Va. 980, 984 (1978)). The overt act requirement distinguishes an attempt to commit a crime from "mere preparation" to do so, which is not a criminal offense. See Sizemore, 218 Va. at 983. However, "[t]he question as to what is [an overt] act, is often a difficult one to determine, and no general rule, which can be readily applied as a test to all cases, can be laid down . . . . Each case must, therefore, be determined upon its own facts." Jay, 275 Va. at 525 (quoting Hicks v. Commonwealth, 86 Va. (11 Hans.) 223, 226 (1889) (reversing a defendant's conviction for attempted poisoning and concluding that

obtaining a poisonous substance and soliciting another to put it in an intended victim's coffee amounted to mere preparation)). As a result, criminal attempt "is more intricate and difficult of comprehension than any other branch of the criminal law." Hicks, 86 Va. (11 Hans.) at 226.

In its endeavor to define an overt act sufficient to transition from preparation to an attempt, our Supreme Court has been consistent with the conclusion of Justice Holmes on the subject and repeatedly emphasized that the act must reach "far enough toward the accomplishment of the desired result to amount to the commencement of the consummation." Jay, 275 Va. at 526 (quoting Hicks, 86 Va. (11 Hans.) at 226-27); see also, e.g., Howard v. Commonwealth, 207 Va. 222, 227 (1966); Merritt v. Commonwealth, 164 Va. 653, 657 (1935); Thacker v. Commonwealth, 134 Va. 767, 769-70 (1922). Put another way, the "overt act" must be an action that begins (commences) the execution (consummation) of one or more elements of a crime but does not complete all of them.

Here, only the second element of attempted robbery is at issue. Jones concedes his intent to rob Strickland. Specifically, in his brief to this Court, Jones states that "[w]ith all reasonable inferences drawn in favor of the Commonwealth, the evidence at trial established that [Jones] and his codefendants . . . intended to rob a drug dealer[.]" Jones argues only that he did not undertake some overt act in furtherance of his intent. The Commonwealth disagrees and argues that the circuit court's judgment that Jones had committed an attempted robbery was not plainly wrong and was supported by credible evidence.

In its petition for rehearing *en banc* and in its brief, the Attorney General argues that the panel failed to properly consider controlling precedent from our Supreme Court and that the two cases relied upon by the panel, Hopson and Jordan, were wrongly decided and misapplied case

law regarding the requirement of an overt act for an attempt conviction.[5]  According to the Attorney General, an overt act is established if the prosecution proves *any* "slight act" done *in furtherance of a defendant's criminal intent*.  While the General Assembly is free to define an overt act or the law of attempt more broadly than the common law if they choose to do so, in the absence of such action on their part, the courts of the Commonwealth remain bound by the common law as it is historically understood.  The construction the Attorney General and apparently the concurrence would place on that phrase however, is inconsistent with the overwhelming body of common law jurisprudence on the subject.

In support of its argument, the Attorney General cites our Supreme Court's decision in Lee v. Commonwealth, 144 Va. 594 (1926), where it affirmed a defendant's conviction for attempted murder.  In Lee, the defendant expressed his intention to kill his first cousin, Loving, after being ordered to leave Loving's home.  Id. at 598-99.  The defendant then returned to his own home, armed himself with a loaded shotgun, went back to Loving's home, and crept around the corner of the house.  Id. at 601-02.  "He thereupon stationed himself outside the door with his gun held in position to shoot."  Id. at 602.  During a subsequent scuffle between the defendant and Loving, "the gun was discharged and the barrel burst."  Id. at 598.  The defendant was subsequently convicted of attempted murder.

---

[5] In a footnote, the Commonwealth also argues that "[i]t is possible for this Court to conclude that Jordan and Hopson were wrongly reasoned but not wrongly decided."  The Commonwealth posits that this Court could determine that the evidence in those cases "was insufficient to establish the intent of the co-defendants and would then not need to address the issue of an act in furtherance in those cases."  We need not determine whether, or to what extent, Hopson and Jordan were wrongly reasoned or decided.  Both of those decisions were heavily dependent on the facts before that Court and the analysis was sparse.  Because we take the occasion here, sitting *en banc*, to more fully address the law as it pertains to crimes involving an attempt, we need only say that, to the extent that Hopson and Jordan are inconsistent with this opinion, they can no longer be considered good law.

On appeal, our Supreme Court analyzed the difference between preparation and attempt. In doing so, the Lee Court quoted with approval the following statement from the Supreme Court of Mississippi in Stokes v. State, 46 So. 627 (Miss. 1908):

> [W]henever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation, and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worst sense.

Lee, 144 Va. at 600; see also Stokes, 46 So. at 629.

The Attorney General emphasizes the Lee Court's use of the phrase "slight acts," but that phrase should be considered in the context of Stokes. In the Stokes case, the Supreme Court of Mississippi upheld a defendant's conviction for attempted murder even though the defendant never shot at the intended victim. Id. at 628. Rather, the defendant hired an assassin. Id. On the night that the killing was to occur, however, police officers arrested the defendant outside of the intended victim's home as the defendant was handing a loaded gun to the would-be assassin, who had secretly informed the police of the defendant's plan. Id. Relying upon its so-called "slight acts" standard, the Supreme Court of Mississippi determined that the defendant had committed an overt act sufficient to sustain his conviction of attempted murder. Id. at 629.

The defendant in Stokes also contended that because he did not actually shoot at the intended victim, he could not be held guilty of attempted murder. In disposing of that issue, the Supreme Court of Mississippi stated,

> [w]here a party is indicted for an attempt to murder by shooting with a gun, at what time shall it be said that such party has committed an overt act. Is it necessary, in order to convict, that a party shall be allowed to proceed to do all towards the accomplishment of his crime, except actually to pull the trigger? If

not, then when may it be said that an overt act has been committed? When it is proved that a party has the design to kill and has the means to accomplish that design, shall it be held that no crime is committed unless that design is frustrated at the very instant it is attempted to be carried out? Must the citizen be required to imperil his existence up to the time of the actual menace before he can claim the protection of the law and procure the punishment of the offender? The mere buying of the gun would be preparation and not attempt. The mere buying of a gun and loading it might not constitute an attempt. But when the facts show, in furtherance of the design, that a gun has been procured and loaded, and the party so procuring and loading the gun has armed himself and started out on his mission to kill, but is prevented from carrying out his design by such extraneous circumstances as that the party he intends to kill does not come to the point where he expected to carry out his design, or if the party designing to kill is arrested and prevented from carrying out the design, he is clearly guilty of the attempt.

Id. at 628. Our Supreme Court in Lee quoted the entirety of this passage from Stokes. See Lee, 144 Va. at 601.

Aside from quoting passages from the Stokes opinion, however, our Supreme Court did not attempt to comprehensively analyze the occasionally subtle differences between mere preparation and an attempt to commit a crime. Rather, our Supreme Court noted that it "heartily concur[red]" with most of the principles outlined by the Stokes court and subsequently affirmed the defendant's conviction for attempted murder. See Lee, 144 Va. at 601-02.

The Attorney General also relies upon subsequent Virginia case law approving of the "slight acts" standard originally explained in Stokes and adopted in Lee. For example, the Commonwealth cites Martin v. Commonwealth, 195 Va. 1107, 1112-13 (1954), where the Court affirmed a defendant's conviction for attempted "pandering."[6] The Martin Court explicitly relied upon and quoted Stokes and Lee in its analysis. See id. at 1112. Further, the Attorney General

---

[6] We recognize that the "slight acts" standard from Lee and Martin has permeated into other attempt cases from this Court and our Supreme Court. See, e.g., Sizemore, 218 Va. at 985; Whitt v. Commonwealth, 61 Va. App. 637, 662 (2013) (en banc); Parsons v. Commonwealth, 32 Va. App. 576, 582 (2000); Tharrington, 2 Va. App. at 495-96.

- 12 -

cites examples from this Court, as well as our Supreme Court, where the word "slight" is used as a descriptive word in similar contexts, such as the amount of corroboration necessary to support a conviction following a defendant's confession. See Watkins v. Commonwealth, 238 Va. 341, 348 (1989) ("[W]here, as here, the accused has fully confessed the crime, only *slight* corroborative evidence is necessary to establish the *corpus delicti*." (emphasis in original)); see also Cherrix v. Commonwealth, 257 Va. 292, 305 (1999).

To convict Jones for the crime of attempted robbery, the Commonwealth had to prove beyond a reasonable doubt not only that Jones intended to rob Strickland, but also that Jones undertook some "direct, but ineffectual, [overt] act" toward the consummation of taking property from Strickland against his will by force, violence, or intimidation. See Jay, 275 Va. at 525-26 (quoting Pitt, 260 Va. at 695). "While the overt acts of the accused [need not be] the last proximate acts necessary to the consummation of the crime, they [must be] direct overt acts well calculated to accomplish the result intended." Id. at 526 (quoting Granberry v. Commonwealth, 184 Va. 674, 678 (1946)). As our Supreme Court first explained in Hicks and more recently reiterated in Jay,

> [t]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, *it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made.*

Id. (emphasis added) (quoting Hicks, 86 Va. (11 Hans.) at 226-27); see also Glover v. Commonwealth, 86 Va. 382, 386 (1889) ("It need not, therefore, be the last proximate act to the consummation of the crime in contemplation, but is sufficient if it be an act apparently adapted to produce the result intended. It must be something more than mere preparation.").

- 13 -

We agree with the Attorney General and the concurrence that an act constituting an attempt can be "slight." Our discussion with our concurring colleagues is focused on whether the overt act, however slight, must implicate one or more elements of the offense or merely the underlying criminal intent. Unfortunately, our Supreme Court has not been consistent in the language used to describe the parameters of an overt act in the context of an attempt to commit a crime. In Lee, Martin, and Sizemore, the cases relied upon by the concurrence, that Court ratified the phrase "slight acts done in furtherance of [the] *design*" as originally explained by the Supreme Court of Mississippi in Stokes. See Sizemore, 218 Va. at 985 (emphasis added) (quoting Stokes, 46 So. at 629); Martin, 195 Va. at 1112 (same); Lee, 144 Va. at 600 (same). However, in more recent cases, our Supreme Court has clarified the point by using the phrase "overt act" instead, which it in turn defined in the specific context of an attempted robbery as a "direct, but ineffectual, act toward the consummation of taking property . . . against [the victim's] will by force, violence, or intimidation." Jay, 275 Va. at 526; see also Secret v. Commonwealth, 296 Va. 204, 228 (2018) ("An attempt [is] any overt act done with the intent to commit the crime, and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime."); Commonwealth v. Herring, 288 Va. 225, 235 (2014) (same). The analyses in these latter cases clearly indicate that an overt act constituting an attempted crime must have linkage to an element of the offense, rather than merely the overall criminal intent.

Moreover, the Hicks standard does not provide comprehensive guidance with respect to distinguishing an act amounting to preparation to commit the crime from the attempt to do so, and the "slight acts done in furtherance" language used in Lee, Martin, and Sizemore, and missing from later Supreme Court cases has given rise to some confusion. This is because any overt act analysis requires two important considerations—the nature of the overt act and its

timing in relation to the elements of the intended crime. Further, in some conceivable situations, it is difficult to harmonize Hicks with the "slight acts" standard from Lee, Martin, and Sizemore. Taking the Attorney General and the concurrence's position to its logical extreme, Lee, Martin, and Sizemore plausibly stand for the proposition that once a defendant's subjective criminal intent is established, any slight act irrespective of its nature, time or location is sufficient to move beyond the threshold of criminality and indeed, the Attorney General conceded as much at oral argument. Such a standard, however, is overly broad and fails to consider important evidentiary distinctions in attempt cases—whether the evidence objectively demonstrates "the commencement of the consummation" or, stated another way, the beginning of the commission of the intended crime itself. See Jay, 275 Va. at 526 (quoting Hicks, 86 Va. (11 Hans.) at 226-27). Therefore, we recognize that confusion surrounding the difference between preparation and attempt is, at least in part, due to less than precise language and abridged analyses regarding the type of slight or overt act that satisfactorily manifests a defendant's commencement of the commission of a crime.

In summary, the difference between our analysis and that of our concurring colleagues is whether, to constitute an attempted crime, an overt act, "slight" or not, must be in furtherance of the commission of the *crime itself* or merely in furtherance of the *criminal intent* to commit it. In seeking to rectify the confusion on this point that may be found in our own jurisprudence, we accept the more precise guidance from our Supreme Court and elsewhere which clarifies that, in order for a crime to be attempted, and thus for criminal liability to attach, the intended crime must be in progress to some extent. In Lynch v. Commonwealth, 131 Va. 769 (1921), our Supreme Court explained that "[t]o make the act an indictable attempt it must be a *cause* as distinguished from a *condition*. And it must go so far that it must result in the crime unless frustrated by extraneous circumstances." Id. at 774 (emphasis added) (quoting Wharton's

- 15 -

Criminal Law § 181 (11th ed. 1912)); see also Cause, Black's Law Dictionary (10th ed. 2014)

(defining the word "cause" as "something that produces an effect or result").  Additionally, as

explained by our Supreme Court in West v. Commonwealth, 156 Va. 975 (1931),[7]

> [t]he failure to consummate a crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission. . . .
>
> There is quite a difference between preparation for the attempt and the attempt itself.  Preparation consists in arranging the means necessary for the commission of the crime.  The attempt is the direct movement towards its commission, after the preparations have been made.  *An act, to amount to an attempt, must reach far enough towards the accomplishment of the crime to amount to the commencement of the consummation.*  It need not be the last proximate act to the consummation of the crime attempted to be committed, yet, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the crime after the preparations have been made.

Id. at 978-79 (emphasis added).  Therefore, it is clear to us that preparation ends and attempt

begins once an overt act commencing an element of the intended crime is initiated with the

requisite intent.[8]

We also find additional guidance from Justice Holmes in his 1881 published lectures

"The Common Law."  There, Justice Holmes addressed the point where criminal liability

attaches by framing two hypothetical problems.  In the first hypothetical, Justice Holmes stated

that,

---

[7] In West, the defendant drove a truck-load of supplies to within several hundred yards of an illegal still, which police raided the previous morning.  Id. at 977.  The defendant was then convicted of violating multiple prohibition laws.  Id. at 976-77.  On appeal, our Supreme Court reversed and held that the evidence "neither sustain[ed] the charge of attempting to manufacture ardent spirits, nor of aiding and abetting another in manufacturing ardent spirits."  Id. at 978.  However, the Court did not consider the issue of attempted aiding and abetting.

[8] Our concurring colleagues assert that this choice of words means that "the element must be completed."  This assertion is simply incorrect.

> lighting a match with intent to set fire to a haystack has been held
> to amount to a criminal attempt to burn it, although the defendant
> blew out the match on seeing that he was observed.

Oliver Wendell Holmes, Jr., The Common Law 67 (1881). In the second, however, Holmes observed that,

> [t]he law does not punish every act which is done with the intent to
> bring about a crime. If a man starts from Boston to Cambridge for
> the purpose of committing a murder when he gets there, but is
> stopped by the draw [bridge] and goes home, he is no more
> punishable than if he had sat in his chair and resolved to shoot
> somebody, but on second thoughts had given up the notion.

Id. at 68. In a continuing discussion on the proper resolution of these hypothetical questions, Justice Holmes noted that "[e]minent judges have been puzzled where to draw the line," but also illustrated what, in his view, it takes to constitute a criminal attempt by observing as follows:

> When a man buys matches to fire a haystack, or starts on a journey
> meaning to murder at the end of it, there is still a considerable
> chance that he will change his mind before he comes to the point.
> But when he has struck the match, or cocked and aimed the pistol,
> there is very little chance that he will not persist to the end, and the
> danger becomes so great that the law steps in.

Id. at 68-69. Holmes's latter hypothetical also expresses the basic public policy that encourages would-be criminals to abandon their efforts by not attaching criminal liability to their actions until they actually begin the commission of the intended crime.

Mindful of the authority referenced above, this Court has already distinguished preparation from attempt in a manner that avoids the pitfalls of Lee, Martin, and Sizemore, as well as the limitations of Hicks. In Lewis v. Commonwealth, 15 Va. App. 337 (1992), this Court concluded that for preparation to end and attempt to begin, some element of the intended crime must have commenced. In that case, we reversed a defendant's conviction for attempted delivery of marijuana to a prisoner because the defendant merely received and possessed money intended to purchase marijuana. Id. at 338-39. No evidence proved that the defendant possessed

- 17 -

marijuana, made arrangements to secure marijuana, or "did any other thing connecting his possession of the money to marijuana." Id. at 340. In reaching our conclusion, we explained that "[p]reparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." Id. at 340 (quoting People v. Buffum, 256 P.2d 317, 321 (Cal. 1953)); see also Sheng Jie Jin v. Commonwealth, 67 Va. App. 294, 304 (2017); Bloom v. Commonwealth, 34 Va. App. 364, 371 (2001); Parsons v. Commonwealth, 32 Va. App. 576, 583 (2000).

Our decision in Lewis clarifies the language from Pitt that to support an attempted crime, any overt act must be a *direct* act to *accomplish* the crime. Only then does preparation become an attempt. The difference between preparation and attempt lies between an act in preparation of a crime—one yet to take place or commence—and an act in the commission of a crime. Of course, the "act in commission of a crime" can be "slight" yet enough to constitute an attempt. Threatening actions such as cocking a gun or pointing one at an intended victim or an unsuccessful demand for money or personal property, coupled with an implied threat, are examples of acts that would be insufficient, standing alone, to constitute a completed robbery. With the addition of the requisite criminal intent, such acts would certainly be enough to satisfy the elements of attempted robbery.

Moreover, expanding the definition of an overt act as urged by the concurrence and the Attorney General would effectively eliminate "mere preparation" as a discrete concept. This is necessarily the case since, under such an expanded definition, every act done in preparation to commit a crime is also by definition an act in furtherance of the criminal intent. Although our concurring colleagues flatly state otherwise, they offer no limiting principle that would

distinguish an overt act "in furtherance of the criminal intent" constituting preparation from one they would consider an attempt.

The concurring opinion in this case relies upon language from <u>Sizemore</u> to propose what is essentially a "we will know it when we see it" analytical approach. One result of adopting the concurrence's definition is that one could be convicted of attempted robbery despite the lack of any victim being placed in fear and any demand for personal property made. In other words, this approach could result in affirming a conviction for attempted robbery where *none* of the elements of robbery have yet been commenced. Moreover, such an imprecise definition of an attempt would undercut the common law principle that "[t]he law does not punish every act which is done with the intent to bring about a crime." Oliver Wendell Holmes, Jr., <u>The Common Law</u> 68 (1881).

Further, the parameters of attempt crimes encouraged by the Attorney General would effectively obviate the common law policy consideration that previously allowed one to abandon a criminal enterprise without consequence at any time before actually creating a victim. While erroneous in our view, the Attorney General candidly argues, and our concurring colleagues do not disagree, that once the criminal intent is formed, *every* act to effectuate that intent constitutes an attempt. This, as previously explained, is neither the result that the common law requires nor desires. Hypothetically, in the Attorney General's view, acts triggering criminal attempt liability would include actions that were historically considered mere preparation, such as acquiring a weapon or a mask, driving to the location of the crime, parking a vehicle to facilitate a quick getaway, and walking toward the entrance of the location of the robbery with a gun and/or mask in a pocket.

While the line between preparation and an attempt may not be as bright as may be desirable, neither is it as dim as the concurring opinion suggests. Of course, the elements of the

crime and the facts of each case will determine whether an attempted crime has occurred, but whatever the luminosity of the line between preparation and attempt, it is far more definite than the concurrence submits. It seems axiomatic to us that preparation is every act, slight or not, that serves as a *prelude* to the commission of the crime. Thus, preparation necessarily ceases when the commission of that crime actually begins through the commencement of *an* act—not the "last proximate act" as asserted by our colleagues—that constitutes one or more elements of the crime. In response, our concurring colleagues postulate a third, very gray area, where they suggest that preparation has ceased but no execution of an element of the intended crime has yet commenced. The concurrence, however, offers nothing to distinguish the parameters of this gray area except a purely arbitrary proposition that any act in furtherance of the criminal intent they consider subjectively close enough in space and time to the locus of the crime is sufficient to constitute an attempt.

Additionally, as previously noted, current public policy does not attach criminal liability for a substantive offense until the point where a crime is actually commenced. In the context of a robbery, despite having the intent to do so, if no person has been subjected to force, violence or intimidation and no demand to part with personal property made, neither robbery nor attempted robbery has yet occurred, although as noted in connection with the concurrence's hypothetical, other crimes may well be complete. At the other end of the spectrum, if both have been accomplished and personal property taken, a completed robbery has occurred. Between those points, if an act constituting any of those elements has commenced, the crime of attempted robbery has occurred even if the enterprise is abandoned or interrupted before completion.

Returning to the present matter, we hold that the evidence does not show that Jones committed an overt act sufficient to constitute the commencement of the consummation of the crime of robbery despite having the requisite criminal intent. At no time did Jones or his

co-conspirators use force, threat, or intimidation in any manner against, or seize property from, Strickland. Rather, the record demonstrates that Jones and his co-conspirators never encountered Strickland or even entered Strickland's residence. Furthermore, the record contains no evidence that Strickland lived in the vicinity where Officers Binford and Seabridge encountered Jones and his co-conspirators. While it is *possible* that Jones and his co-conspirators were in the vicinity of Strickland's residence and *may* have been moments away from the process of commencing the planned robbery, the record does not even objectively reveal those facts.[9] Therefore, without speculation, even in the light most favorable to the Commonwealth, we cannot conclude that Jones's presence and actions went beyond preparation to commit a robbery or otherwise reached far enough towards the accomplishment of the desired result to amount to the commencement of an element of that offense. Accordingly, we reverse Jones's conviction for attempted robbery and dismiss that indictment.

### D. Use of a Firearm

We now turn to Jones's second assignment of error that the evidence was insufficient to support his conviction for use of a firearm in the commission of a felony, in violation of Code

---

[9] An ancillary but important factor in any analysis of whether Jones's actions constitute an attempt to commit robbery is the fact that, on the record before us, Jones and Boyce would be principals in the second degree to any completed robbery, and thus their criminal liability is at least partially derivative of the actions of any principal in the first degree that they intended to aid and abet in the planned robbery. See Dunn v. Commonwealth, 52 Va. App. 611, 617 (2008) (*en banc*) ("A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance."); see also Dusenbery v. Commonwealth, 220 Va. 770, 771-72 (1980) ("Although conviction of a principal in the first degree is not a condition precedent to conviction of an accessory, Code § 18.2-21, before the accessory to a crime can be convicted as such, it must be shown that the crime has been committed by the principal." (internal quotation marks and citation omitted)).

The concurring opinion relies upon this fact as the principal reason it would nevertheless reverse the judgment below. The record clearly reflects, however, that Jones engaged in overt acts in furtherance of his criminal intent and thus, using our concurring colleagues' own logic, there ought not be any impediment to affirming the judgment in this case. The concurrence provides no explanation for this analytical inconsistency. !

- 21 -

§ 18.2-53.1. In relevant part, that statute makes it "unlawful for any person to use or *attempt to use* any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit" a number of enumerated felonies, including robbery. Code § 18.2-53.1 (emphasis added). The circuit court determined that Jones possessed the sawed-off shotgun found by Officer Seabridge in the course of an attempted robbery. Consequently, the circuit court convicted Jones of use of a firearm in the commission of that attempted robbery. On appeal, Jones argues that the evidence was insufficient to prove that he used, attempted to use, or displayed a firearm in the commission of a felony.

To convict a defendant of violating Code § 18.2-53.1, the Commonwealth must prove beyond a reasonable doubt "that the [defendant] actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." Startin v. Commonwealth, 281 Va. 374, 379 (2011) (quoting Yarborough v. Commonwealth, 247 Va. 215, 218 (1994)). "Possession of a firearm is an essential element of the statutory offense[.]" Yarborough, 247 Va. at 219. Further, proof of a defendant's "'actual' possession of a firearm under Code § 18.2-53.1 may be established by circumstantial evidence, direct evidence, or both." Byers v. Commonwealth, 23 Va. App. 146, 150 (1996) (citing Yarborough, 247 Va. at 216-19); see also McBride v. Commonwealth, 22 Va. App. 730, 735 (1996).

If possession is established, the plain language of Code § 18.2-53.1 permits conviction under one of two theories. The first theory criminalizes "us[ing] or attempt[ing] to use" a firearm. Code § 18.2-53.1. According to our Supreme Court, a defendant uses or attempts to use a firearm within the meaning of the statute "if he or she employs [or attempts to employ] it." See Rowland v. Commonwealth, 281 Va. 396, 401 (2011). The second theory criminalizes "display[ing]" a firearm "in a threatening manner." Code § 18.2-53.1. "A person 'displays' a

- 22 -

firearm if he or she manifests it 'to any of a victim's senses.'" Rowland, 281 Va. at 401-02

(quoting Cromite v. Commonwealth, 3 Va. App. 64, 66 (1986)). Additionally, to convict a

defendant under either theory, the use, attempted use, or threatening display must occur "while

committing or attempting to commit" one of the statute's enumerated felonies. Code

§ 18.2-53.1. The qualifier "while" limits the applicability of the statute to use of a firearm

"during" the commission or attempted commission of those felonies. See Rowland, 281 Va. at

401.

Here, Jones concedes that, "[c]onstruing all facts in the light most favorable to the

Commonwealth," he "merely possessed" the sawed-off shotgun discovered by Officer Seabridge.

It follows that we need only analyze whether Jones used or attempted to use the sawed-off

shotgun or displayed the sawed-off shotgun in a threatening manner, *while* committing or

attempting to commit robbery.[10]

Since we have concluded that the evidence is insufficient to sustain Jones's conviction

for attempted robbery, we also hold that the evidence is insufficient to sustain Jones's conviction

for use of a firearm in the commission of an attempted robbery. Viewed in the light most

favorable to the Commonwealth, the evidence does not reflect that Jones manipulated the

sawed-off shotgun in any manner prohibited by the statute *while* committing or attempting to

commit robbery. Further, even though Jones possessed the sawed-off shotgun, his possession of

it only amounted to preparation to commit robbery and not attempted robbery as required by

Code § 18.2-53.1. Accordingly, we reverse Jones's conviction for use of a firearm in the

commission of an attempted robbery and dismiss that indictment.

---

[10] Possession of a sawed-off shotgun is a Class 4 felony, but it does not appear that Jones was ever charged with that offense. See Code § 18.2-300(B).

## III.  CONCLUSION

For these reasons, we reverse Jones's convictions for attempted robbery and use of a firearm in the commission of attempted robbery and dismiss those indictments.  However, we remand the case to the circuit court and direct that court modify the sentencing order consistent with this opinion and correct any clerical errors in its orders regarding Jones's conviction or sentencing on the unchallenged conviction of conspiracy to commit robbery.

Reversed and final judgment and remanded.

Beales, J., with whom Decker, C.J., and Russell and AtLee, JJ., join, concurring in the judgment.

I concur with the majority that the conviction of attempted robbery (and of possession of a firearm in the commission thereof) must be reversed because the evidence was insufficient to prove that Jones committed attempted robbery. However, I cannot agree with the majority's new test on what constitutes an overt act.

### A. The Common Law and the Crime of Attempt

Code § 1-200 states, "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." As the majority notes, robbery is not defined by statute in Virginia. Consequently, we derive the definition of robbery from the common law. Likewise, "what constitutes an attempt must be ascertained from the common law." Johnson v. Commonwealth, 209 Va. 291, 293 (1968). However, "the crime of attempt is a relatively recent development of the common law." Wayne R. LaFave, Criminal Law § 11.2 (6th ed. 2017). "Blackstone, publishing the fourth book of his COMMENTARIES in 1769, makes no mention whatever of the modern doctrine of attempts." Francis Bowes Sayre, Criminal Attempts, 41 Harv. L.R. 821, 834 n.51 (1928). The Supreme Court in 1889, however, defined "attempt" as follows:

> An attempt in criminal law is an apparent unfinished crime, and hence is compounded of two elements, viz.: (1) The intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design.

Glover v. Commonwealth, 86 Va. 382, 385-86 (1889) (citing Uhl v. Commonwealth, 47 Va. 706, 707 (1849)).

The evidence in this case clearly supports the first element of attempt – the intent to commit a robbery. Jones admitted to Detective Ewers that his co-conspirator, Trip, planned to rob Austin Strickland and that Jones planned to aid in this endeavor by giving Trip protection during the

- 25 -

robbery to "make sure Trip didn't get hurt." Thus, the central issue in this case is whether the evidence was sufficient to prove that Jones committed an overt act ("a direct act done") in furtherance of the robbery.

B. The Established Law on "Overt Acts" and the Supreme Court's Already Established Framework

While I agree with the majority that the Commonwealth has not proved attempted robbery in this case, I must respectfully depart from the analysis of the majority on the new test it has created for determining when an action amounts to an overt act. I disagree with the majority's conclusion that years of common law and Supreme Court precedent regarding what constitutes an "overt act" required for an attempt should now be "[p]ut another way" to mean an action that begins "the execution" of "one or more elements of a crime but does not complete all of them." While simultaneously suggesting that courts have created "a wide and not entirely consistent variety of phrases to describe the type of act" sufficient to establish an attempted offense, the majority has decided to throw its own hat into the ring by introducing its own test. It now invites litigants to grapple with the requirement that attempt "begins once an overt act commencing an element of the intended crime is initiated with the requisite intent." While the majority indicates that it endeavors to clarify the law of attempt, I strongly suspect that today's opinion will have the exact opposite effect.[11]

The majority's new test attempts to create a bright-line rule on the law of attempt. This runs contrary to its own statement that "how near to success any effort to commit a crime must come before criminality attaches is obviously a question to be determined in each case upon the specific facts of the case and the elements of the intended crime." More importantly, it violates the Supreme

---

[11] While the majority attempts to maintain that its new test is similar to the "commencement of the consummation" test repeatedly stated by the Supreme Court (by stating that this is simply the Supreme Court's test "[p]ut another way"), there is no doubt that this test is an entirely new and different approach.

Court's instruction that "no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts." Sizemore v. Commonwealth, 218 Va. 980, 985 (1978). In lieu of a bright-line test, the Supreme Court has already provided us with a framework which we are bound to use to analyze the crime of attempt and overt acts. In Hicks v. Commonwealth, 86 Va. 223, 226-27 (1889), the Supreme Court explained as follows:

> [T]he act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made.

In Lee v. Commonwealth, 144 Va. 594 (1926), the Supreme Court instructed us how to determine when the crime of attempt has been committed in cases where a defendant's intent has been clearly shown. In 1926 (and in the decades following), the Supreme Court stated:

> Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation, and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes.

Lee, 144 Va. at 600 (quoting Stokes v. State, 46 So. 627, 629 (Miss. 1908)); Martin v. Commonwealth, 195 Va. 1107, 1112 (1954); Sizemore, 218 Va. at 985.

The majority dismisses the Supreme Court's guidance on the "slight acts" test – essentially attributing it to "less than precise language and abridged analyses." The majority also labels the test "overly broad" and insufficient for taking into account "important evidentiary distinctions in attempt cases." It states that, if this test were taken to the logical extreme, the test would "plausibly stand for the proposition that once a defendant's subjective criminal intent is established, any slight act irrespective of its nature, time or location is sufficient to move beyond the threshold of criminality

. . . ." However, this "logical extreme" incorrectly assumes that the slight acts test would be applied in a vacuum and without regard to a defendant's proximity to accomplishing the crime.

The slight acts test does not change the requirement that the action must still be more than mere preparation in order to be an "overt act," nor does it permit courts to convict a defendant who has taken some minuscule step toward the start of crime. Instead, the knowledge of the defendant's intent simply changes the meaning of his actions. A seemingly small, potentially innocent act – such as lighting a match near a haystack – can be an overt act when the defendant's ultimate intent is clear.[12] Conversely, when a defendant's intent is unclear, the overt act must provide evidence of both the defendant's intent and the immediacy of the crime. See Tharrington v. Commonwealth, 2 Va. App. 491, 494 (1986) ("An overt act is required to prove an attempted offense because without it, there is too much uncertainty as to the accused's actual intent."). We cannot and should not disregard this strong guidance from the Supreme Court, which has been reiterated repeatedly in Virginia case law since the Supreme Court's decision in Lee in 1926. See, e.g., Sizemore, 218 Va. at 984-85; Martin, 195 Va. at 1112; Whitt v. Commonwealth, 61 Va. App. 637,

---

[12] Contrary to the majority's claim that the slight acts test was one of the "pitfalls" created by the Supreme Court in Lee, Martin, and Sizemore, the example referenced by the majority shows that the slights acts test is rooted in the common law. The majority references the following example given by Oliver Wendell Holmes, Jr.:

> lighting a match with intent to set fire to a haystack has been held to amount to a criminal attempt to burn it, although the defendant blew out the match on seeing that he was watched.

Oliver Wendell Holmes, Jr., The Common Law 67 (1881). This example illustrates that the knowledge of the individual's intent changes the criminality of the act. With his intent known, the potentially innocent act of lighting a match near a haystack becomes an overt act. "The accompanying intent . . . renders the otherwise innocent act harmful, because it raises a probability that it will be followed by such other acts and events as will all together result in harm." Id. at 67-68. See also Joel Prentiss Bishop, Commentaries on the Criminal Law § 729 (6th ed. 1877) ("We have seen, that an act may be evil in itself, or evil by reason of the intent prompting it, or being in itself evil may be rendered more so by the intent." (footnotes omitted)).

661-62 (2013) (*en banc*); Parsons v. Commonwealth, 32 Va. App. 576, 582 (2000); Tharrington, 2 Va. App. at 495-96.

The majority's new test is also problematic because it seems to require all but the "last proximate act" to complete the crime – a position contrary to established law. See Commonwealth v. Herring, 288 Va. 59, 78 (2014) ("We have long rejected the position that the overt act can only be the 'last proximate act to the consummation of the crime in contemplation.'" (quoting Glover v. Commonwealth, 86 Va. 382, 385-86 (1889))).[13]  The examples provided by the majority make this clear.  The majority states, "In the context of a robbery, despite having the intent to do so, if no person has been subjected to force, violence or intimidation and no demand to part with personal property made, neither robbery *nor attempted robbery* has yet occurred . . . ."  (Emphasis added). Although the majority claims that its test only requires that the overt act "have linkage to an element of the offense," the attempted robbery examples used by the majority show that the majority's new test actually requires that the overt act *be* the commission of at least one of the elements of the offense – not just linked to an element of the offense.  Under the majority's test, a defendant detained by the police after walking into a convenience store while wearing a mask and holding a shotgun with his finger on the trigger would not be guilty of attempted robbery if there were no customers in the store and the clerk was unaware of the defendant's entry because he was elsewhere at the time, such as in the backroom or the bathroom.  Despite the hypothetical defendant's obvious intent and dangerous proximity to completing a robbery, he would not be convicted of attempted robbery under the majority's test because no one was yet subject to intimidation and no personal property was yet demanded.  While I agree with the majority that "[t]he law does not punish every

---

[13] See also 22 C.J.S. Criminal Law: Substantive Principles § 159 (2019) ("The act that goes beyond mere preparation *need not constitute an element of the target crime and need not be the ultimate step* toward the consummation of the design; instead, it is sufficient if the conduct is the first or some subsequent act directed towards that end after the preparations are made." (emphasis added)).

act which is done with the intent to bring about a crime," Oliver Wendell Holmes, Jr., The Common

Law 68 (1881), the law *does* punish every act committed with the required intent where the act is

more than mere preparation and is "apparently adopted to produce the result intended," Herring, 288

Va. at 78 (quoting Martin, 195 Va. at 1110-11).

While scholars and courts have struggled for many years to find the line that divides

preparation and attempt,[14] the majority suggests that it has found a solution to this problem that has

confounded so many others for so long. Today the majority declares that for "preparation to end

and attempt to begin, some element of the intended crime must have commenced,"[15] and criticizes

---

[14] See e.g., United States v. Dworken, 855 F.2d 12, 16 (1st Cir. 1988) ("The invariably elusive nature of what constitutes an 'attempt' has long been the subject of judicial chagrin."); John S. Strahorn, Jr., Preparation for Crime as a Criminal Attempt, 1 Wash. & Lee L.Rev. 1, 1 (1939) ("Both as fascinating and as fruitless as the alchemists' quest for the philosopher's stone has been the search, by judges and writers, for a valid, single statement of doctrine to express when, under the law of guilt, preparation to commit a crime becomes a criminal attempt thereat."); Oliver Wendell Holmes, Jr., The Common Law 68 (1881) ("Eminent judges have been puzzled where to draw the line, or even to state the principle on which it should be drawn, between the two sets of cases."); see also Sayre, supra at 846 (finding it "manifestly impossible to lay down any mechanical or hard and fast rule for the drawing of the line between preparation and indictable attempts").

[15] In an effort to make their test appear to be rooted in existing law, the majority cites to Lewis v. Commonwealth, 15 Va. App. 337 (1992). However, Lewis does not stand for this proposition. While this Court reversed Lewis's conviction for attempt to deliver marijuana to a prisoner, it did not conclude that Lewis must have commenced an element of that crime in order for his conviction to be upheld. In fact, this Court implied that the evidence may have been sufficient if there had been evidence that "Lewis possessed marijuana, that Lewis made arrangements to secure marijuana, or that Lewis did any other thing connecting his possession of the money to marijuana." Id. at 340. Each of these actions falls noticeably short of commencing the delivery of the marijuana, which would seem to be the required step under the majority's new test based on the language of the test and its examples regarding attempted robbery.

Furthermore, this Court in Lewis, did not, as the majority indicates, somehow alter or clarify the "slight acts" test set forth by the Supreme Court in Lee and Martin. The "slight acts" test is only relevant when criminal intent is clearly established, and Lewis's criminal intent to deliver marijuana was not clearly established. In fact, the evidence was consistent with his having the exact opposite intention as the Court found the evidence was "consistent with [the] hypothesis" that Lewis intended to commit a completely different crime – i.e., a "shakedown type fraud practiced by this guard on the inmates *in which he never had any intention to deliver marijuana.*" 15 Va. App. at 341 (emphasis added).

us for not deciding the exact point where preparation ends and attempt begins in all cases. However, whether an overt act has been committed must be determined on a case-by-case basis, viewing the totality of the circumstances in each case. That is why the Supreme Court has clearly said that there can be no bright-line test for all attempt cases to determine when an action has moved beyond mere preparation. For all these reasons, I cannot join the majority's effort to create such a bright-line test.

C. The Evidence is Insufficient to Uphold Jones's Conviction for Attempted Robbery, Given the Complete Lack of Evidence About the Purported Victim's Whereabouts

Given that Jones's intent was clearly established through his confession – and not challenged on appeal – we consider the rule that "slight acts done in furtherance of this design will constitute an attempt." Lee, 144 Va. at 600. Even applying this test, however, the evidence in this case is insufficient to uphold Jones's conviction for attempted robbery, primarily because the record is completely devoid of evidence as to the whereabouts of Strickland, the intended target of the planned robbery, and the record does not actually show whether Jones had yet reached the scene of the intended crime. As discussed *supra*, the slight acts framework does not alleviate the requirement that the actions taken be more than "merely preparatory." Hicks, 86 Va. at 226-27. Here, we cannot conclude that Jones's actions were more than "merely preparatory" as the Commonwealth simply failed to put on any evidence that Strickland was present in one of the homes or loft apartments in this neighborhood when these events took place. Not only do we lack evidence of Strickland's actual location during the relevant time, we cannot even discern from the record precisely where or why the trio believed they would encounter Strickland in order to commence a robbery. The Commonwealth presented absolutely no evidence that would allow the factfinder to conclude that Strickland lived in, or otherwise frequented, the nearby homes or lofts – or that he was expected to make an appearance in the alleyway or at some other location where Boyce and Jones were following Trip on foot.

- 31 -

In addition, the Commonwealth presented no evidence that Trip was found at the scene when Boyce and Jones were apprehended. Trip's absence suggests that the co-conspirators had not yet reached the intended scene of the crime because Boyce and Jones would need to be near Trip in order to effectuate their plan to protect him during the robbery.[16] For these reasons, I agree with the majority that the conviction for attempted robbery must be reversed. I also agree that the conviction for possession of a firearm in the commission of attempted robbery must be reversed.

### D. The Companion Cases of Hopson and Jordan Were Wrongly Decided

While I agree with the majority on the final disposition of this appeal, given the paucity of the evidence put on by the Commonwealth as to the location or presence of any victim in this case, I must also depart from the majority's analysis because of the importance of definitively overturning this Court's 1993 decision in the companion cases of Hopson v. Commonwealth, 15 Va. App. 749 (1993), and Jordan v. Commonwealth, 15 Va. App. 759 (1993). The majority opinion states that "to the extent that Hopson and Jordan are inconsistent with this opinion, they can no longer be considered good law." It is abundantly clear, however, that Hopson and Jordan will remain completely intact as binding precedent in Virginia after today's decision. According to the majority, "if no person has been subjected to force, violence or intimidation and no

---

[16] Trip's apparent absence highlights another gap in the Commonwealth's evidence. In its brief before our full Court, the Commonwealth acknowledged that Jones admitted only to his intent to act as a principal in the *second degree*. "Our law is clear that no one can be convicted as a principal in the second degree or as an accessory unless the evidence establishes the commission of the offense by a principal in the first degree." Sult v. Commonwealth, 221 Va. 915, 918 (1981); see also Dusenbery v. Commonwealth, 220 Va. 770, 771-72 (1980). While a fact finder could reasonably infer that Trip was the third individual in the white Mercedes, who got out of the vehicle first and "walked across the street" to an unknown location, there is no evidence as to what Trip did or where he went – or even if he was headed toward Strickland. Because the Commonwealth failed to prove that there even was a principal in the first degree who committed attempted robbery or robbery, Jones could not be convicted of that crime as a principal in the second degree.

demand to part with personal property made," attempted robbery has not occurred. Hopson and Jordan had completed their preparations and were then peering around the corner toward the entrance of the store – one with a gun in hand and the other wearing a mask – but the police interrupted them before they could complete the "last proximate act[s]" of robbery and subject the clerk and customers to force, violence, or intimidation. Therefore, under the majority's test, Hopson and Jordan remain good law. I write separately because, in addition to disagreeing with the majority's new test, I believe that Hopson and Jordan must be overturned.

Applying the Supreme Court's framework to the facts of those cases involving two co-defendants, I respectfully must conclude that they were wrongly decided. It is important to note that the three-judge panel of this Court that decided the case presently before us reversed Jones's conviction because the panel determined that Hopson and Jordan mandated that outcome.[17] "[W]hile published panel decisions of the Court of Appeals are precedent binding on

_____

[17] Hopson and Jordan were distinguishable in other cases where we have upheld attempt convictions, such as Rogers v. Commonwealth, 55 Va. App. 20 (2009), and Reaux-King v. Commonwealth, No. 0734-14-2 (Va. Ct. App. Apr. 28, 2015), but their continued viability as binding precedent has led to a confusing amalgam of case law. We are rightly hesitant to overturn previous decisions of this Court, but there are occasions, when sitting *en banc*, where clarifying our case law and correcting a wrongly decided case demands it. The problems created by Hopson and Jordan are especially apparent in Reaux-King. In that case, the evidence demonstrated that Reaux-King met a convenience store clerk outside of the store and told her that he intended to rob the store during her shift. Id. at *1. He showed her a machete that he told her he intended to put against her throat during the robbery. Id. After the clerk went back into the store, Reaux-King paced around the outside of the store and entered and exited the store twice "looking around without buying anything or using the restroom." Id. at *4. He remained near the store, and the clerk testified that her manager called the police just as Reaux-King leaned behind the ice machine where he had hidden the machete. Id. He was also leaning behind the ice machine when the police arrived. Id. While the panel majority correctly distinguished Hopson and Jordan, the dissent disagreed, stating that "binding Virginia jurisprudence necessitates a reversal in this case" and adding, "Accordingly, I respectfully dissent from the majority opinion because it is inapposite to our holdings in Hopson v. Commonwealth, 15 Va. App. 749 (1993), and Jordan v. Commonwealth, 15 Va. App. 759 (1993)." Reaux-King, Record No. 0734-14-2, at *7 (Humphreys, J., dissenting). The fact that the dissent in Reaux-King found that these companion decisions would prevent the Court from upholding convictions for an attempted robbery that is as clear as the attempted robbery is in

other panels of [this] Court, the precedent remains subject to review by the Court of Appeals sitting *en banc* . . . ." Armstrong v. Commonwealth, 263 Va. 573, 581 (2002).  Given that we are now sitting *en banc* and given the problems with these companion cases involving co-defendants (decided on the same day in 1993), this Court can and should use this opportunity to actually overturn those decisions.

The panel that decided Hopson and Jordan concluded that "[n]one of the two men's actions can be regarded as an act toward the consummation of a robbery."  Jordan, 15 Va. App. at 762.  I simply cannot reconcile that conclusion of law with the facts of those cases.  I would conclude that the facts were certainly sufficient for a rational factfinder (the jury) to find the evidence sufficient and to establish at least one overt act by the defendants that went beyond mere preparation.  The two men were not just "behaving suspiciously," as the panel suggested. Hopson, 15 Va. App. at 752.  Jordan had already entered the store "[o]n several occasions, apparently to reconnoiter it."  Id.  Viewing the facts in the light most favorable to the Commonwealth (as the party that prevailed at trial), when the additional police officers arrived as back-up, the reconnoitering was by then well completed after already several trips inside the store to check it out.  At that point, Jordan was wielding a revolver in his hand and Hopson had pulled a mask over his head as they looked around the corner of the store toward the entrance. Id.  Given that "the design of [those defendants] to commit a crime is clearly shown," Lee, 144 Va. at 600, according to the panel deciding the case, by their hanging around behind the store, reconnoitering the inside of the store several times already that day, and trying to flee when they heard an ambulance siren and as the police arrived, the panel should have applied the slight acts

---

cases like Reaux-King exemplifies why not explicitly overturning Hopson and Jordan will continue to muddy Virginia case law on attempt crimes.

test.[18]  In doing so, the panel certainly should have concluded that Hopson's act of pulling a mask over his head and Jordan's act of wielding a firearm in his hand (while peering around the side of the building toward the entrance of the store) were both at least "slight acts" done in furtherance of the attempted robbery.

As the majority acknowledges, "the aim of the law is not to punish sins, but is to prevent certain external results, the act done must come pretty near to accomplishing that result before the law will notice it."  In Hopson and Jordan, the defendants came very near to accomplishing the result.  If this Court is to follow the common law and the Supreme Court's guidance, Hopson and Jordan cannot stand.  Unlike the uncertainties in the case now before us, those defendants were clearly at the scene of the crime, their preparations were completed, and they were ready to complete the "last proximate act" of the crime of robbery.  It was only the intervention of the police that prevented their intended result.  Therefore, for all of these reasons, I would overturn this Court's decision in the two companion cases of co-defendants Hopson and Jordan as they were wrongly decided, and any continued viability of those companion cases will muddy the case law of what constitutes an attempt in Virginia.

### E.  Conclusion

Our Court is bound by the common law and the decisions of the Supreme Court, including those decisions providing that no bright-line test can or should be made.  This Court must continue to apply the framework provided by the Supreme Court in Hicks v.

---

[18] The three-judge panel in Hopson and Jordan should have applied the slight acts test because Hopson's and Jordan's design to rob the store was clearly shown.  I would note, however, that even using the "commencement of the consummation" standard, it is very difficult to see how Jordan's wielding a firearm in his hand and Hopson's having put a mask on his head (as they peered around the corner of the building looking toward the entrance of the store) was not a "commencement of the consummation" of what would have been robbery if the police had not arrived.

Commonwealth, 86 Va. 223, 226-27 (1889), and in <u>Lee v. Commonwealth</u>, 144 Va. 594 (1926), and, therefore, I cannot join in the majority's new bright-line test.

I concur in the judgment of this Court, however, because the evidence in this case was insufficient to sustain Jones's conviction for attempted robbery or use of a firearm in the commission thereof. On the attempted robbery charge, the record is completely devoid of the location of the intended victim. The Commonwealth failed to present evidence of Strickland's whereabouts, or even of the co-conspirators' beliefs as to Strickland's whereabouts, to allow us to infer that the robbery was about to commence or that the co-conspirators had even arrived at the scene of Trip's purported attempt to rob Strickland. As no evidence was presented even to show that Jones had reached the scene of the intended crime or of where the potential victim was, his conviction for attempted robbery should be reversed.

Finally, I write separately as I would overturn the wrongly decided decisions in the companion cases of <u>Hopson</u> and <u>Jordan</u> because of the importance of ensuring clear guidance in our jurisprudence dealing with the crime of attempt. Applying the Supreme Court's slight acts framework, Hopson's and Jordan's actions of putting on a mask, wielding a gun, and peering around the corner of the store to its entrance were overt acts that went beyond mere preparation. Although the majority suggests that its new test would limit these cases as precedent to some extent, today's opinion has no impact on <u>Hopson</u>'s and <u>Jordan</u>'s continued viability and seemingly actually reaffirms them under the majority's new test.

For all of these reasons, I concur only in the judgment of this Court reversing Jones's convictions for attempted robbery and use of a firearm in the commission of attempted robbery.[19]

---

[19] Jones's conviction for conspiracy to commit robbery is not before us on appeal and, consequently, remains in place unaffected by our decision today.

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **30th** *day of* **October, 2018**.

Dustin Scott Jones,                                                                                    Appellant,

 against                    Record No. 1764-16-2
                           Circuit Court Nos. CR16000048-00, CR16000064-00 and CR16000065-00

Commonwealth of Virginia,                                                            Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On October 16, 2018 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on October 2, 2018, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, four printed copies of each brief shall be filed. It is further ordered that the appellee shall file an electronic version and four additional copies of the appendix previously filed in this case.[1]

A Copy,
                              Teste:

                                        Cynthia L. McCoy, Clerk
                                        *original order signed by a deputy clerk of the*
                              By:       *Court of Appeals of Virginia at the direction*
                                        *of the Court*
                                        Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Russell, Chafin and Senior Judge Clements
Argued at Richmond, Virginia


DUSTIN SCOTT JONES

                                    MEMORANDUM OPINION* BY
v.      Record No. 1764-16-2          JUDGE JEAN HARRISON CLEMENTS
                                          OCTOBER 2, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Aaron M. Vandenbrook, Assistant Public Defender I (Shaun R.
Huband, Deputy Public Defender, on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


      Appellant was convicted in a bench trial of conspiracy to commit robbery, attempted

robbery, and use of a firearm in the commission of attempted robbery.  He argues on appeal that

the evidence did not prove attempted robbery because the evidence did not establish that he

performed an overt act in furtherance of the intended robbery.  He also contends that the

evidence is insufficient to sustain his conviction for use of a firearm.  We agree, and reverse and

dismiss both convictions.[1]

BACKGROUND

      At about 5:45 a.m. on October 6, 2015, Petersburg Police Officers Binford and Seabridge

saw a white Mercedes drive into the parking lot of a housing complex that they were observing.

---

      * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

      [1] Although appellant included the circuit court case number for his conspiracy conviction
in his notice of appeal, he has not in fact contested that conviction.

They were in an unmarked pickup truck, but wearing full uniform. A man exited the car and walked across the street. Two other men, who were later identified as appellant and Phillip Boyce, got out of the car a few minutes later and "adjust[ed]" their clothing for four or five minutes before starting to cross the street in the same direction that the first man had gone. The officers followed the men to an alley between two residences. They saw appellant and Boyce at the corner behind one of the houses, but not near the door. When the men saw the officers, they started to walk down the alley toward the street. The officers exited their truck and announced their presence. Boyce stopped walking, but appellant fled. Seabridge saw appellant run in and out of a fenced parking lot before returning to the Mercedes and driving away.

Another officer apprehended appellant a short time later. Seabridge then searched the Mercedes, recovering a ski mask. He located another ski mask in a street that appellant had travelled before he was stopped. Several hours later, in response to a telephone call, Seabridge searched the fenced-in area where he had seen appellant running and found a sawed-off shotgun under a bush inside the gate.

After he was arrested, appellant gave Detective Ewers conflicting statements about the incident, but eventually admitted that he and Boyce were there to "make sure Trip didn't get hurt." According to appellant, Trip had intended to rob a known drug dealer, A.S. No evidence was presented at trial regarding where A.S. lived.

The trial court determined that appellant's statement to the police that he accompanied Trip to protect him during the planned robbery made appellant "part of the robbery." The court said that if appellant had said nothing, the evidence would be insufficient to convict him.

ANALYSIS

When reviewing a challenge to the sufficiency of the evidence, this Court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and

- 2 -

reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it. See Farhoumand v. Commonwealth, 288 Va. 338, 351, 764 S.E.2d 95, 102 (2014).

An attempted crime "is composed of two elements, the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design." Rogers v. Commonwealth, 55 Va. App. 20, 24-25, 683 S.E.2d 311, 312-13 (2009) (quoting Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 573 (1968)). Here, because appellant has not challenged the sufficiency of the evidence to prove intent to commit robbery, we are concerned only with whether the evidence proved an overt or direct act. If the intent to commit a crime is clearly established, "slight acts done in furtherance of this design will constitute an attempt." Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986) (quoting State v. Bell, 316 S.E.2d 611, 616 (N.C. 1984)). Whether conduct is an overt act is determined by the specific facts of each case. See Jay v. Commonwealth, 275 Va. 510, 525, 659 S.E.2d 311, 320 (2008). The act must be more than mere preparation, but it need not be the last act necessary to accomplish the crime. See id. at 526, 659 S.E.2d at 320. However, the act must be a "step in a direct movement towards the commission of the offence after the preparations are made." Rogers, 55 Va. App. at 25, 683 S.E.2d at 314 (quoting Hicks v. Commonwealth, 86 Va. 223, 227, 9 S.E. 1024, 1025 (1889)).

We agree with appellant that his case is controlled by Hopson v. Commonwealth, 15 Va. App. 749, 427 S.E.2d 221 (1993), and Jordan v. Commonwealth, 15 Va. App. 759, 427 S.E.2d 231 (1993). Those cases involved co-defendants whose convictions for attempted robbery were reversed on appeal. The two men were observed outside a store "behaving suspiciously." Hopson, 15 Va. App. at 752, 427 S.E.2d at 223. Hopson was seen wearing a mask at one point, and Jordan had a gun in his pocket and had surveyed the store. Id. But they

- 3 -

did not attempt to enter the store, and they made no "move toward realizing the ultimate purpose of robbery." Id. We held that the evidence was "consistent only with scouting the store," but did not demonstrate an overt act to support attempted robbery. Id.

Similarly, here, the evidence did not prove that appellant had begun the actual robbery or that its execution was otherwise imminent. The evidence established that Officers Binford and Seabridge saw a man get out of a car that had been driven into a parking lot and then walk across the street. A few minutes later, they saw appellant and Boyce get out of the car, adjust their clothing and put on hooded sweatshirts, and then walk down an alley between two buildings in the same direction as the first man had gone. However, there was no evidence presented that the planned robbery was imminent or that the intended victim lived in the area of the alley, or was expected to be there at that time. Thus, the evidence showed only some possible preparation for the intended crime, rather than any overt act. "The [attempted] crime must be 'in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature.'" Bloom v. Commonwealth, 34 Va. App. 364, 371, 542 S.E.2d 18, 21 (quoting Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 373 (1992)), aff'd, 262 Va. 814, 554 S.E.2d 84 (2001).

The Commonwealth's reliance on Rogers is misplaced because the facts in the case are distinguishable from appellant's case. In Rogers, the victim saw appellant and another man standing outside his apartment building. A short time later, the victim's doorbell rang, and when he looked out the peephole in the front door, he saw appellant and the other man. The appellant put a black bandana over his face. The victim told his wife to call the police. Looking out the peephole again, the victim saw a third man who appeared to have a gun, and appellant had a baseball bat in his hands. The men continued to ring the doorbell, but the victim did not open the door. The three men fled in a car as the police arrived. This Court held that the evidence was

- 4 -

sufficient to convict appellant of attempted robbery because the completion of the crime was foiled by the appearance of the police.  See 55 Va. App. at 29, 683 S.E.2d at 316.

In appellant's case, the police intervened before the intended robbery occurred, but evidence that appellant performed a direct act was lacking.  As in Hopson and Jordan, the evidence here did not establish the requisite overt act to prove attempted robbery.

Because we find the evidence insufficient to sustain appellant's conviction for attempted robbery, we also must find that the related conviction for use of a firearm fails.  "Under the plain language of Code § 18.2-53.1, there can be no conviction for use or attempted use of a firearm when there has been no commission of one of the predicate offenses enumerated in the statute." Jay, 275 Va. at 527, 659 S.E.2d at 321.  See Hopson, 15 Va. App. at 752-53, 427 S.E.2d at 223 (holding that defendant's conviction for use of a firearm in the commission of attempted robbery could not stand because it was "contingent upon proof of the underlying felony," and such proof was lacking).

For these reasons, we reverse and dismiss appellant's convictions for attempted robbery and use of a firearm in the commission of attempted robbery.

Reversed and dismissed.