**Norfolk**

FRED LEE HOPSON, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1469-91-1

Decided February 23, 1993

COUNSEL

Terry N. Grinnalds, for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—On appeal from his jury trial conviction of attempted robbery, use or display of a firearm in attempting to commit robbery, and wearing a mask in a public place, Fred Lee Hopson, Jr. contends: (1) that the evidence was insufficient to convict him of attempted robbery and of use or display of a firearm during an attempt to commit robbery; (2) that the trial court erred in allowing into evidence Hopson's three prior firearm use convictions; (3) that the evidence was insufficient to convict him of unlawfully wearing a mask in a public or private place; and (4) that the trial court erred in refusing to give the jury a separate finding instruction on attempted robbery for each defendant. We reverse and dismiss the charges of attempted robbery and use or display of a firearm during an attempt to commit robbery. We affirm the conviction of wearing a mask in a public place. We do not address the prior conviction and instruction issues because they are moot.

Under familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable and fairly deducible inferences.

On April 27, 1991, while on patrol in a high crime area, Officers Browning and Jardin spotted two men, Hopson and Anthony Jordan, crouched by the side of a Chevron Mart. The officers called for back-up and positioned themselves to see the activities around the store. From his position, Officer Browning noticed the two men talking and looking around the corner of the building. He saw Hopson wearing a white stocking cap that was pulled down to a point just above his eyebrows. Officer Scott, who responded to the call, arrived and saw Hopson with a mask covering his face. Officer Scott further observed that, when he was arrested, Hopson still wore the mask, but not over

his face. Officer Anderson, who arrived with Officer Scott, saw Jordan peeping around the corner of the store while holding a revolver. Anderson also saw the stocking cap on Hopson's head.

An ambulance drove by sounding its siren. Hopson looked up, saw Officer Anderson and uttered an expletive. The two men then attempted to flee on bicycles. They failed to stop at the officers' command and were detained forcibly. Officer Browning grabbed the handlebars of Hopson's bicycle. Other officers knocked Jordan off his bicycle onto the ground. The officers found the previously seen handgun next to Jordan. The store manager testified that Jordan had come into the store several times, and on one occasion had purchased a bottle of wine.

Upon questioning by the police, both men stated that they were behind the store drinking wine that Jordan bought from the store. They stated that Jordan had also gone inside to price beer, but finding it too expensive, they had decided to leave the area. Jordan explained that he had borrowed the coat he was wearing from his cousin and that he knew the revolver was in the coat. Hopson denied seeing or knowing about the presence of the revolver.

At trial, Jordan's cousin testified that Jordan came to her house earlier and left with her coat, in which she had left her revolver. Jordan testified that he borrowed the jacket from his cousin when he left her house. He explained that he drank a bottle of wine with Hopson behind the store, and had tried to buy beer in the store, but found it too expensive. He testified that he was unaware that the revolver was in his pocket, and that he had told the officers that the revolver must belong to his cousin only because it was her jacket.

Hopson testified that he saw Jordan borrow the jacket but never saw the revolver. He stated that he and Jordan were drinking wine behind the store and that they only peeked around the corner to avoid being arrested for drinking in public. He claimed that he wore a "wave" cap, but never pulled it over his face. Both men maintained that they were unaware that the police were in the area until they were stopped while attempting to leave.

■ Hopson first contends that the evidence presented at trial was insufficient to prove attempted robbery. He argues that the Commonwealth failed to prove the requisite intent or an overt act.

[A]n attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose.

*Sizemore v. Commonwealth*, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978).

[T]he question of what constitutes an attempt is often intricate and difficult to determine, and . . . no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts.

*Id.* at 985, 243 S.E.2d at 215.

Viewed in the light most favorable to the Commonwealth, the evidence established that Hopson and Jordan were outside the store behaving suspiciously and repeatedly peeking around the corner of the building. Jordan wielded a pistol and Hopson, at one point, had a mask covering his face. On several occasions, apparently to reconnoiter it, Jordan entered the store. When Hopson saw Officer Anderson, he uttered an obscenity, and both men quickly tried to leave the premises. They failed to stop at the officers' command and were detained forcibly. This circumstantial evidence was sufficient to prove their intent to rob the store. *See Bell v. Commonwealth*, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991). However, this is but one element of attempted robbery.

■ To prove an attempt, the Commonwealth must demonstrate an overt, ineffectual act which "must go beyond mere preparation and be done to produce the intended result." *Tharrington v. Commonwealth*, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986) (citation omitted). Hopson and Jordan committed no act directed toward the consummation of a robbery. Rather, the evidence discloses nothing more than preparation to commit the crime. They remained behind and beside the store and made no move toward the door. They peeked around the corner several times, an action consistent only with scouting the store. Neither man made any move toward realizing the ultimate purpose of robbery.

Hopson's next contention, that the evidence presented did not establish his knowledge of the firearm's existence or his use or display of it in a robbery attempt, must also prevail. His conviction for use of a

firearm in commission of a felony is contingent upon proof of the underlying felony. Because the evidence did not prove the underlying felony, the firearm conviction cannot stand.

Hopson next contends that the trial court erred in receiving evidence of his three prior "use of firearm" convictions, instead of merely the one necessary to satisfy the repeat offender sentencing provision of Code § 18.2-53.1. He further contends that the trial court erred in refusing separate jury instructions defining the elements of attempted robbery, referring respectively to him and to Jordan with whom he was tried jointly. Our reversal of Hopson's convictions of attempted robbery and use of a firearm during an attempt to commit robbery renders these questions moot, and we do not consider them.

Hopson next contends that the evidence was insufficient to prove that he wore a mask in violation of Code § 18.2-422. He argues that the Commonwealth failed to prove whether the location of the act was public or private. We disagree. The Chevron Mart and its lot were open to the public for business. Thus, it was a public place. Officer Scott saw Hopson there with his face covered by a mask. The evidence sufficiently supports Hopson's conviction on this charge.

For the foregoing reasons, we affirm the judgment of the trial court convicting Hopson of unlawfully wearing a mask in a public place in violation of Code § 18.2-422. We reverse the judgment of the trial court convicting him of attempted robbery and of use or display of a firearm while attempting to commit robbery, and those charges are dismissed.

*Affirmed in part and reversed in part.*

Elder, J., and Bray, J., concurred.