COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


STEPHAN ROGERS
                                                             OPINION BY
v.        Record No. 0985-08-4                      JUDGE RANDOLPH A. BEALES
                                                            OCTOBER 6, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                                  James F. Almand, Judge

            Robert W. Gookin for appellant.

            Josephine F. Whalen, Assistant Attorney General II (William C.
            Mims, Attorney General, on brief), for appellee.


        A jury convicted Stephan Rogers (appellant) of attempted robbery and use or attempted use

of a firearm in the commission of a felony.  He appeals these convictions, arguing that the evidence

was not sufficient to convict him of the two crimes because the victim was "not present" and

because "no circumstances independent of the will of the appellant . . . interrupted him and his

companions."  We, however, find the evidence was sufficient to convict him of both crimes.

                                         BACKGROUND

        G.V.* lived with his wife and family in an apartment on the first floor of a building in

Arlington, Virginia.  On June 20, 2007, the family went out to celebrate the graduation of one of

G.V.'s sons.  They returned home at about 10:00 p.m.  Before entering their apartment building,

G.V. observed appellant and another man standing near the outside door to the apartments.  G.V.

and his family went into their apartment and locked their front door.

_____
        * We use initials rather than the names of the victims throughout this opinion so as to
protect their privacy.

Soon after they entered their apartment, someone rang their doorbell, and G.V. went to the front door. However, he first looked out the peephole in the door. He observed appellant and his friend standing there. G.V. then saw appellant put a black bandana across his face. G.V. told his wife to call the police and then looked out the peephole again. This time, he saw a third man with the other two, and this third man appeared to have a gun. The third man said to his companions, "Talk to them about the money." G.V. saw a baseball bat in appellant's hands. The men rang the doorbell three times, but G.V. did not open the door.

The police arrived very quickly. While Corporal Mark Guenther was walking toward the apartment building, he observed a silver car, parked about seven spaces south of G.V.'s building, "pull out quickly and turn south on North Thomas Street, with the headlights out." This behavior "spiked" the officer's curiosity, so he returned to his patrol vehicle and followed the silver car. Corporal Guenther eventually stopped the car.

Inside the silver car were three men – appellant, Kenny Williams (the driver), and Jesse Kearney. Corporal Guenther got Williams's permission to search the car. He found a black bandana on the back seat where appellant had been sitting. He also recovered another black bandana from Kearney's back pants pocket.

Officer Saundra Lafley arrived at the site where Corporal Guenther had stopped the silver car. She began to search the area for evidence, going over the path taken by the car. Within a block of where the silver car was stopped, Officer Lafley found two guns "visible on the front lawn" of a house, about five feet apart. A third gun was located on the curb of the same yard.

At trial, Kearney testified for the Commonwealth. He explained that the three men had agreed to rob an apartment in Arlington because they suspected "a lot of money [would be] in

the house because the lady sold phone cards."[1]  The three men planned to enter the apartment, search it, lock everyone in the apartment in one room, take the money, and leave.

Kearney testified that the three men first drove to an acquaintance's apartment where Williams got three firearms and the directions to G.V.'s apartment.  They then drove to the apartment building.  Kearney and appellant got out of the car and went inside the apartment building first.  They went upstairs, rather than directly to G.V.'s apartment, because there were people standing around on the first floor.  Kearney and appellant then went back outside because Williams had not joined them in the building.  Appellant told Kearney, "Look, we don't do this, I'm not doing nothing else with you all, so make up your mind."  The three men decided they were "going to try this one more time."  They walked back into the apartment building.

Kearney explained that appellant put on a black bandana as a mask and took out a gun while the men were walking up the steps to the door.  One of the men rang the doorbell, but no one opened the door.  The men then rang the doorbell again and knocked on the door, but no one answered.  They could hear a television inside the apartment, so they knew someone was home.  However, they did not want to stand in the hallway for too long, so they returned to their car.

Kearney also testified that, as they sat in the car, they noticed someone else knocking on G.V.'s door, and appellant said, "Wait.  Let's see if she will open the door."  No one did.  The men then saw a policeman walking up the sidewalk, so appellant said, "Go, but don't go too fast [and] draw attention to yourself."  Williams then started the car, but he pulled out quickly, and the police then started to follow the car.  While driving, Williams told the other two men to throw the guns out the window, which they did.

---

[1] G.V. testified that his wife earned money by selling telephone cards door-to-door.

At trial, after the close of the evidence, appellant made a motion to strike, which the trial court denied.  The jury then convicted appellant of attempted robbery and use or attempted use of a firearm in the commission of a felony.

## ANALYSIS

Appellant argues that no direct, but ineffectual, act ever commenced the crime, that the men never saw the victims, and that "no circumstances independent of [his] will . . . interrupted him and his companions," so the attempted crimes were not proved.  In essence, he contends the Commonwealth did not meet its burden of proof and, therefore, this Court should find the evidence was insufficient to support his convictions.

### Rule 5A:18

The Commonwealth argues that much of appellant's argument was not preserved pursuant to Rule 5A:18, which requires that an appellant make his argument "together with the grounds therefor" to the trial court before this Court will consider those arguments.  We find appellant stated his grounds sufficiently to the trial court.

While the words used in appellant's motion to strike before the trial court were somewhat different from the particular language that he uses on appeal, the meaning and intention of his argument is clearly the same on appeal as the argument that he made to the trial court.  Therefore, his argument was preserved under Rule 5A:18.  See Code § 8.01-384; Shelton v. Commonwealth, 274 Va. 121, 127-28, 645 S.E.2d 914, 916-17 (2007).

### Sufficiency of the Evidence to Prove Attempt Crimes

"An attempt in criminal law is an unfinished crime and is composed of two elements, the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design."  Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 573 (1968).

> To convict [a defendant] of attempted robbery, the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation. Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a direct, but ineffectual, act to accomplish the crime.

Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78-79 (2000). In this appeal, appellant does not argue that the evidence was insufficient to prove his intent to commit a robbery and use a firearm in the commission of that robbery. Instead, he argues that he did not take sufficient steps to constitute a "direct act" toward the commission of the crimes because he did not proceed beyond mere preparation of the crime to the point where he saw the victim and because "no circumstances independent of [his] will . . . interrupted him and his companions."

Long ago, the Virginia Supreme Court explained the concept of a "direct act" toward the commission of a felony:

> the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made.

Hicks v. Commonwealth, 86 Va. 223, 226-27, 9 S.E. 1024, 1025 (1889). The Hicks Court also used the language that appellant finds important here – "'The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offence, but for the intervention of circumstances independent of the will of the party.'" Id. at 228, 9 S.E. at 1026 (quoting People v. Murray, 14 Cal. 159, 160 (1859)).

Although no "unbending guide" exists to distinguish between preparations for a crime and acts in furtherance of a crime, generally the courts have found that "'preparation consists in devising or arranging the means or measures necessary for the commission of the offense and

- 5 -

that the attempt is the direct movement toward the commission after the preparations are made.' 14 Am. Jur., 816." Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946). When the evidence proves that a defendant had the intent to commit a completed crime, "any slight act done in furtherance of this intent will constitute an attempt." Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 28 (1992).

Appellant argues that his acts amounted to preparation and not a "direct movement toward" robbery and use of a firearm, especially as he never confronted the intended victim. He contends that Hopson v. Commonwealth, 15 Va. App. 749, 427 S.E.2d 221 (1993), and its companion case, Jordan v. Commonwealth, 15 Va. App. 759, 427 S.E.2d 231 (1993), support his position. He argues that, just as in Hopson, he and his companions merely planned the robbery and went to the scene, actions that did not take sufficient steps towards the completion of the crimes. We disagree with appellant.

Here, appellant and his co-conspirators did more than plan the robbery and get firearms. They clearly formed the intention to rob G.V.'s family in G.V.'s home. The men then obtained firearms and the address for G.V.'s home. They went to that home with the firearms. Appellant put on a bandana to hide his identity. The men took firearms and a bat inside the building and to the door of the home. One of the men held a gun out so that it could be seen if someone opened the door. The men knocked on G.V.'s door and rang his doorbell, attempting to gain entry into the home so that they could commit the robbery at gunpoint. These acts clearly moved beyond the planning stage and into the realm of commencing the robbery and the use of the firearms. Only the victim's astute decision to look through his front door's peephole before answering the door prevented appellant and his co-conspirators from completing their plan to commit robbery.

Hopson can easily be distinguished from the facts here. In that case, Hopson and his friend went into a store to "reconnoiter," went back outside, peeped around corners, got a gun,

and put on masks, but they never entered the store or attempted to enter the store with the purpose of initiating the robbery. 15 Va. App. at 752, 427 S.E.2d at 223. Given these particular facts, the Hopson Court explained:

> Hopson and Jordan committed no act directed toward the consummation of a robbery. Rather, the evidence discloses nothing more than preparation to commit the crime. They remained behind and beside the store *and made no move toward the door*. They peeked around the corner several times, an action consistent only with scouting the store. Neither man made any move toward realizing the ultimate purpose of robbery.

Id. (emphasis added). Here, the men did more than get guns, put on masks, and "reconnoiter" – they actually walked up to the door, holding guns, and attempted to get inside the home by knocking and ringing the doorbell. These acts went beyond planning. Appellant and his companions actually began the robbery, but were foiled in their attempt by the refusal of the victims to open their door.

The facts here are more comparable to Sizemore v. Commonwealth, 218 Va. 980, 243 S.E.2d 212 (1978), where Sizemore pointed a gun at an officer, but did not pull the trigger. Sizemore was convicted of attempted murder, even though he lowered his weapon without shooting. Sizemore argued that, since he chose not to shoot the gun, he had not committed attempted murder. The Supreme Court affirmed his conviction, finding that Sizemore did not have to "perform the 'last proximate act' necessary to commit the crime" in order to be convicted of attempting to commit murder. Id. at 986, 243 S.E.2d at 215.

Here, as in Sizemore, the men took preparatory steps and then actually began following through with their plan to rob G.V.'s family. Their actions were no longer merely preparation, as in Hopson, but instead, when the co-conspirators walked into the building and knocked on the door with guns in hand, they were taking steps in the commission of an armed robbery, just as

the Supreme Court found that Sizemore's act of pointing a gun was the first act toward committing a murder.

Fortunately, an "extraneous circumstance[] frustrated the consummation," id. at 984, 243 S.E.2d at 214, of these crimes – the intended victims refused to open their door and let the perpetrators inside. Appellant argues that this "circumstance independent of the will of appellant" precluded the factfinder from convicting him of an attempted robbery and attempted use of a firearm in the commission of a felony. However, we find appellant seriously misconstrues this concept.

In Hicks, and in other cases since 1889, Virginia courts have discussed attempted crimes and explained that, if a crime is stopped before its completion by "'the intervention of circumstances independent of the will of the party'" who intended to commit a *completed* crime, then that party *can* be convicted of *attempting* to commit that crime. 86 Va. at 228, 9 S.E. at 1026 (quoting Murray, 14 Cal. at 160); see also Howard v. Commonwealth, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966) (affirming an attempt conviction where "an extraneous circumstance independent of the will of defendants . . . prevented them from carrying out their intent to commit murder"); Bloom v. Commonwealth, 34 Va. App. 364, 371, 542 S.E.2d 18, 21 ("The [attempted] crime must be 'in such progress that it will be consummated *unless* interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature.'" (quoting Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 373 (1992) (emphasis added)), aff'd, 262 Va. 814, 554 S.E.2d 84 (2001). In Sizemore, the Supreme Court explained that, if a person intends to commit a crime and also takes actions to initiate the crime, an intervening cause that prevents the completion of the crime (even a perpetrator's own reluctance to complete the act) *does not* preclude a conviction of attempting to commit the crime. 218 Va. at 985-96, 243 S.E.2d at 215-16.

The intervention of an external factor, such as the victim's refusal to cooperate by opening the door, does not somehow absolve a defendant of attempting to commit a crime. Instead, such an intervention frustrates the completion of the crime, and, therefore, precludes convicting a defendant of the *completed* crime, but it does not preclude convicting a defendant of *attempting* to commit the crime. Here, appellant was unsuccessful in committing a robbery and using a firearm in the commission of that felony because the victims would not cooperate with his plan and open the door. We fail to understand how this action negates appellant's culpability. If the victims had opened the door, then appellant and his companions would have committed robbery and used firearms in the commission of that robbery. The shrewd, intervening action of G.V. simply prevented appellant's conviction for actual robbery and use of a firearm in the commission of an actual robbery. G.V.'s action did not preclude appellant's convictions for attempting to commit these crimes. Moreover, under <u>Sizemore</u>, it does not matter whether the "intervening cause" that prevented the completion of this robbery was an outside circumstance – such as the victim's refusal to answer the door, as happened here – or a change of mind by the perpetrators. Neither circumstance constitutes a defense to the crime.

CONCLUSION

We find the evidence was sufficient to convict appellant of attempted robbery and of use or attempted use of a firearm in the commission of a felony, and, therefore, we affirm both convictions.

<u>Affirmed.</u>