COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia

UNPUBLISHED

OSMAR HERNANDEZ SANTA MARIA, A/K/A
   EL PRINCE
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1321-21-2               JUDGE MARY BENNETT MALVEAUX
                                                       DECEMBER 20, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Paul C. Galanides for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Osmar Hernandez Santa Maria ("appellant") of first-degree murder, in

violation of Code § 18.2-32, two counts of use of a firearm in the commission of a felony, in

violation of Code § 18.2-53.1, and three counts of attempted robbery, in violation of Code

§§ 18.2-26 and -58.  Appellant argues that the evidence was insufficient to sustain the conviction for

the attempted robbery of Arelio Merida Alva because no evidence established that the perpetrator

demanded or took anything from Alva.  Appellant also contends that the evidence was insufficient

to convict him of the offenses because the Commonwealth's witnesses were "inherently incredible."

Finding no error, we affirm the trial court's judgment.

BACKGROUND

"When presented on appeal with a challenge to the sufficiency of the evidence, an

appellate court reviews the evidence in the 'light most favorable' to the prevailing party at trial,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in this case, the Commonwealth." *Jones v. Commonwealth*, 70 Va. App. 307, 313 (2019) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "'Viewing the record through this evidentiary prism requires [an appellate court] to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."'" *Id.* at 313-14 (alteration in original) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)).

In the evening of March 5, 2016, Arsenio Alers received a phone call from his friend named Gordo, who asked Alers to pick him up. Alers drove to pick up Gordo, along with three other people named Rafiki, Lobo, and Moro. At trial, Alers identified Moro as appellant.[1] Alers and Rafiki testified that the five men went to different areas "trying to rob people" to get cash. Rafiki also testified that they targeted Hispanic individuals because they believed that Hispanics generally carried cash. Lobo gave appellant a .380 semiautomatic firearm, Rafiki had a machete, and Lobo had either a machete or a bat.

On the same night, Julio Figueroa was with his cousin, Clemente Jimenez-Lopez, and his friend, Aurelio Alva. The three of them went to a bar, where Figueroa and Alva had "a few beers." When the bar closed at 2:00 a.m., Jimenez-Lopez, the designated driver, drove the group to the Town and Country apartment complex. As they parked and exited their car, Alers drove up behind them and stopped in the middle of the parking lot. Rafiki testified that the men in the car had "decided to rob them."

Appellant, Lobo, and Rafiki exited Alers' vehicle and ran toward Jimenez-Lopez, Figueroa, and Alva. The man who approached Figueroa had "a bat or a machete" in his hand. Figueroa walked back, tripped, and fell. Another man approached, and the two men stood over

---

[1] Rafiki was identified as Jose Rivas Santiago, and Lobo was identified as Francisco Lemus Castio. The police never identified "Gordo."

Figueroa demanding "everything" that Figueroa had. One of them reached into Figueroa's pocket and removed his wallet. Figueroa heard one of the men say, "let's go," and they went back to their car and left. Figueroa was scared and "focused on saving [his] life."[2]

Alva testified that one of the men came toward him and threatened to kill him and "beat" him. The man "took three punches" at Alva, but Alva stepped back so his attacker could not "get too close." The assailant's fist grazed Alva's nose. The assault stopped after "one of [the assailants] said, let's go." Alva's attacker "couldn't get anything from" him because he was defending himself.

Alers saw appellant chase Jimenez-Lopez. As appellant "went to hit" Jimenez-Lopez in the head with the gun, the gun went off. Jimenez -Lopez fell to the ground. Alers drove appellant, Lobo, Rafiki, and Gordo from the scene. Once in Alers's car, appellant told Rafiki that Jimenez-Lopez would not give appellant his wallet, so "he tried to hit the victim with the gun." When appellant hit Jimenez-Lopez's head with the barrel of the gun, "it went off."

After the men left, Alva checked on Figueroa and they looked for Jimenez-Lopez. They found him on the ground between two cars. Figueroa thought that he was lying down "because he was hiding." Figueroa "pulled him to the sidewalk" and called the police. The autopsy confirmed that Jiminez-Lopez died instantaneously from a single gunshot wound to the head.

After the shooting, appellant and the other four men went to Alers's home. Appellant and Lobo suggested that they go to Texas. Alers drove the group to a Motel 6 in Texas.[2] Along the way, they stopped and "threw the gun into . . . a body of water . . . right off the freeway." Alers, Rafiki, and Lobo stayed in Texas "for a day" and returned to Virginia. Appellant and Gordo remained in Texas.

---

[2] The Commonwealth offered into evidence the motel's surveillance video and photographs, showing appellant and the other four men at the Motel 6 in Cedar Park, Texas.

When Alers returned to Virginia, the police interviewed him. Alers told them nothing about the robberies, denied knowing Lobo, and reported that he went to Texas to "see [his] homies" and "for work." Alers was not arrested until 2019, and later pleaded guilty to second-degree murder, attempted robbery, and use of a firearm in the commission of a felony. Although Alers admitted to "[n]ot really" telling the "whole truth" to the police at first, he consistently reported that appellant was "the gunman" on the night of the murder.

On cross-examination, Alers admitted that he initially told the police that appellant had a MS-13 tattoo on his shoulder. In addition, Alers initially reported that Lobo threatened to kill him and his family if he did not participate in the robberies, but he later admitted that statement was "a lie." Alers further acknowledged that he initially told the police that appellant, not Gordo, was in the front seat of his car on the night of the incident and that appellant put a machete to his throat and told him that he had to continue with the robberies. Alers also admitted that he lied when he told the police that there was only one machete in the car because there were actually two machetes. Finally, Alers acknowledged that he lied when he told the police that appellant "turn[ed] the gun" on him after the shooting.

Rafiki also was arrested in 2019 and admitted that he initially lied to the police because he was "scared." At first, Rafiki denied renting the Texas motel room, but he used his own identification to rent the room. Rafiki also told the police initially that it was appellant's "idea to do the robberies because he owed the gang money," but Rafiki admitted at trial that his statement was not true. In addition, Rafiki lied to police about not participating in any of the other robberies that they committed that night, as well as his involvement in the incident and the use of machetes. Rafiki, however, claimed that he truthfully told the police that appellant had the gun the night of the incident. Rafiki pleaded guilty to second-degree murder and attempted robbery.

At the conclusion of the Commonwealth's evidence, appellant moved to strike, which the trial court denied. Appellant testified, and during his testimony he lifted his shirt up to show that he did not have a MS-13 tattoo on his shoulder, as Alers initially had alleged during one of his interviews with police. Appellant also presented stipulated testimony from a government informant who would have testified that Alers "was bragging that he did the shooting" and Rafiki said that Lobo "did the shooting."[3] The informant would have further testified that Alers and Rafiki told him that the shooting occurred because Jimenez-Lopez was believed to be a rival gang member.[4]

At the conclusion of all the evidence, appellant renewed his motion to strike, which the trial court denied. The jury convicted appellant of first-degree murder, use of a firearm in the commission of a murder, attempted robbery of Jimenez-Lopez, use of a firearm in the commission of the attempted robbery of Jimenez-Lopez, attempted robbery of Figueroa, and attempted robbery of Alva. Appellant moved to set aside the jury verdict, which the trial court denied. This appeal followed.

ANALYSIS

Appellant challenges the sufficiency of the evidence to sustain his convictions. "'When reviewing the sufficiency of the evidence, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it."'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "'In such cases, "[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Id.*

---

[3] Law enforcement confirmed that during their investigation "everyone . . . identified [appellant] as the shooter in this incident." Police interviewed Rafiki and showed him six or seven photographs, and Rafiki identified appellant as the gunman. They also interviewed Alers, who identified appellant as "the shooter."

[4] An FBI agent testified that "[n]one of the victims were gang members."

(alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "'Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "'If there is evidentiary support for the conviction, "the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial."'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A.  Attempted Robbery of Alva

Appellant contends that the evidence is insufficient to sustain his conviction for the attempted robbery of Alva because "the testimony did not demonstrate that [Alva's] assailant tried to steal property from Alva or demanded that Alva surrender any property."[5]

"[T]o convict a defendant of attempted robbery, 'the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation.'" *Jones*, 70 Va. App. at 318 (second and third alterations in original) (quoting *Pitt v. Commonwealth*, 260 Va. 692, 695 (2000)). "Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a *direct*, but ineffectual, act *to accomplish the crime*." *Id.* (alteration in original) (quoting *Pitt*, 260 Va. at 695). "The direct but ineffectual act is commonly referred to as an 'overt act.'" *Id.* (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)). "[T]he 'overt act'

---

[5] Appellant does not contest that he was a principal in the second degree and not the person who attempted to rob Alva. A principal in the second degree need not participate in committing the crime. *See Thomas v. Commonwealth*, 279 Va. 131, 156 (2010) ("A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005))).

must be an action that begins (commences) the execution (consummation) of one or more elements of a crime but does not complete all of them." *Id.* at 319.

In *Jones*, this Court reversed a conviction for attempted robbery because the evidence failed to show that Jones "committed an overt act sufficient to constitute the commencement of the consummation of the crime of robbery despite having the requisite criminal intent." *Id.* at 331. In that case, police saw Jones and a co-conspirator exit a car. *Id.* at 312. Police followed Jones and the co-conspirator into an alley between two residences. *Id.* After the police identified themselves, Jones fled and returned to the car, which drove away. *Id.* Shortly thereafter, police stopped the car and apprehended Jones. *Id.* Police found a ski mask inside the car and another ski mask "in a street that Jones had travelled before [he] was stopped." *Id.* Police also recovered a sawed-off shotgun under a bush where Jones had been running. *Id.* at 313. The police interviewed Jones, who stated that he and the co-conspirator went to the housing complex to ensure that another person, who intended to rob a known drug dealer, did not get hurt. *Id.* There was no evidence of where the intended victim lived. *Id.* Jones was convicted of attempted robbery, along with other crimes. *Id.*

On appeal, this Court found that neither Jones nor his co-conspirators had used "force, threat, or intimidation in any manner against, or seize[d] property from, [the intended victim]." *Id.* at 331. In fact, Jones and his co-conspirators "never encountered" the victim or entered his house. *Id.* Under those circumstances, the Court found that Jones's "presence and actions" did not go "beyond preparation to commit a robbery or otherwise reach[] far enough towards the accomplishment of the desired result to amount to the commencement of an element of that offense." *Id.* at 332.

Unlike *Jones*, this Court affirmed a conviction of attempted robbery in *Rogers v. Commonwealth*, 55 Va. App. 20 (2009). In *Rogers*, the evidence established that Rogers and his

co-conspirators agreed to rob an apartment because they suspected a large amount of money was in the residence. *Id.* at 23. Rogers and his co-conspirators acquired firearms and went to the victim's apartment with the firearms. *Id.* Rogers "put on a black bandana as a mask" while he and his co-conspirators walked up steps to the apartment door. *Id.* One of the men had a baseball bat, and one had a firearm. *Id.* at 22. The men knocked on the victim's door and rang the doorbell. *Id.* at 23. The victim looked through the door's peephole, saw the men and the gun and baseball bat, and did not answer the door. *Id.* at 22. On appeal, the Court found that these "acts went beyond planning," as Rogers and his co-conspirators "actually began the robbery, but were foiled in their attempt by the refusal of the victims to open their door." *Id.* at 27.

Similarly, the record evidence here fully supports the conclusion that appellant and his associates attempted to rob Alva. The Commonwealth's evidence established that appellant and the other four men went to the Town and Country apartment complex to rob people for money. Before arriving at the apartment complex, appellant and the other men already had attempted several robberies to get cash. The men armed themselves and chose victims whom they believed might be carrying cash. When they saw Alva, Figueroa, and Jimenez-Lopez in the parking lot, they "decided to rob them." Appellant, Rafiki, and Lobo exited the car and chased Alva, Figueroa, and Jimenez-Lopez. One of the men physically assaulted Alva by swinging his fist at Alva's face three times and grazing his nose. In addition, this assailant threatened to kill him and "beat" him. The attacker used force, threat, and intimidation against Alva. *Jones*, 70 Va. App. at 331.

Although Alva's attacker never demanded anything from Alva or took any property from him, there was still sufficient evidence to support the jury's verdict. Alva's attacker intended to rob him, threatened him, and hit him. The robbery was not completed because Alva defended himself and did not allow the attacker to "get too close." The actions a victim takes to thwart an

- 8 -

intended robbery do not "absolve a defendant of attempting to commit a crime." *Rogers*, 55 Va. App. at 29. Accordingly, we conclude that the Commonwealth's evidence supports the jury's verdict that appellant was guilty of attempting to rob Alva.

## B. Witness Credibility

Appellant further argues that the evidence was insufficient to convict him of any crimes because "the Commonwealth's witnesses were inherently incredible." He contends that Alers and Rafiki were not credible because they gave inconsistent statements to the police.

It is well-settled that "issues of witness credibility and the weight afforded a witness' testimony 'are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). A reviewing court "must accept 'the [fact finder's] determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Id.* (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

In addition, the jury, "who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the testimony in whole or in part." *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000). Any "'inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*

Alers and Rafiki admitted to the jury that they initially lied to the police in certain respects; however, both testified that appellant was with them as they attempted to rob people. Alers and Rafiki consistently reported that appellant had the firearm when it went off and killed Jimenez-Lopez. Police did not recover the firearm, but Alers and Rafiki explained that the gun was disposed of on their way to Texas. Moreover, a surveillance video of the Motel 6 in Texas corroborated their account.

The jury had the opportunity to see and hear the witnesses, including their admissions that some of their initial statements to police were untrue. Notwithstanding those concessions, the jury credited the Commonwealth's evidence. "When 'credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler*, 59 Va. App. at 291 (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Considering the totality of the evidence, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove that appellant was guilty of first-degree murder, two counts of use of a firearm in the commission of a felony, and three counts of attempted robbery.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*