# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia


CHARLES EDMOND COLEMAN, III, SOMETIMES KNOWN AS
  CHARLES EDMUND COLEMAN, III
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0223-22-2                  JUDGE MARY GRACE O'BRIEN
                                                        MAY 16, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Kevin Purnell (Kevin D. Purnell, PLLC, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Charles Edmond Coleman, III (appellant) of first-degree murder,

attempted robbery, armed burglary, discharging a firearm in an occupied building, conspiracy to

commit burglary, conspiracy to commit robbery, and three counts of felonious use of a firearm.  He

assigns error to the court's rulings joining his trial with a co-defendant's, finding sufficient evidence

to support his convictions, and denying his post-sentencing motion to stay his convictions.  For the

following reasons, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND[1]

O.A., an eight-year-old child, was shot and killed during a residential burglary and attempted robbery on January 21, 2019. O.A. lived with his father, Orlando Anderson, and his paternal grandmother, Linda, in King William County. In December and January, Anderson had posted on Facebook that he won "thousands" of dollars in the lottery.

On the night of January 21, O.A. and his grandmother were asleep in her bedroom, and Anderson was in his room. At approximately 11:30 p.m., Anderson heard a loud noise and discovered that two masked intruders had broken into his home. He grabbed a shotgun and attempted to shoot, but his gun jammed. The intruders fired "about six" shots at him before they turned and fled. He chased them outside and managed to fire one round from his shotgun. As Anderson returned inside, he heard Linda yell that O.A. had been shot. Anderson and Linda rushed O.A. to the hospital, where he later died from a single gunshot wound to the head.

Nine days after the crime, police arrested appellant's co-defendant, Keith Hargrove, on unrelated charges in Richmond. The arresting officers found Hargrove with a handgun that was later connected to a bullet and cartridge cases recovered from the King William County crime scene. Hargrove entered a no contest plea to the charges, including possessing the firearm as a felon.

The arresting officers also seized a Samsung cell phone from Hargrove that he admitted was his. A subsequent data extraction showed that on January 21, Hargrove and appellant exchanged several text messages about meeting that evening and discussed a planned "lick" or robbery. Police

---

[1] On appeal, we state the facts in the light most favorable to the Commonwealth. *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021). In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

traced the movement of the phone on January 21 through cell tower records, and the phone was within a quarter mile of Anderson's home at 11:37 p.m.

Appellant and Hargrove were charged with the same offenses, and the Commonwealth moved to join their cases for trial. After a hearing, the court granted the motion over both defendants' objections.

At trial, several witnesses testified about inculpatory statements appellant made, including confessions. Trevin Holmes,[2] appellant's cousin, testified that he and appellant visited Anderson two weeks before the crime. Later that day, appellant told Holmes that he planned to rob Anderson and referred to "life-changing money."

According to Holmes, on January 21, he and appellant went to a residence on First Avenue in Richmond to buy marijuana from Hargrove. Donnell Downey[3] was there when they arrived. Holmes overheard appellant refer to "life-changing money" in a conversation with Downey. When Hargrove arrived, Holmes purchased the marijuana and left, leaving appellant, Hargrove, and Downey at the residence.

The next day, Holmes learned that O.A. had been shot. Holmes saw appellant later that day and asked about O.A. According to Holmes, appellant "got real emotional," stating that "[i]t won't supposed to go down like that." Two weeks later, they spoke again about O.A.'s murder, and appellant was "all tears." Appellant told Holmes that he had kicked in the door to Anderson's house on the night of the shooting.

---

[2] At a separate trial for co-defendant Donnell Downey, Trevin Holmes was identified as having the surname "Gresham."

[3] Downey was convicted of first-degree murder, conspiracy to commit burglary, conspiracy to commit robbery, burglary, attempted robbery, and three counts of use of a firearm in the commission of a felony for his role in the January 21 crimes.

Megan Jefferson, appellant's ex-girlfriend, testified that the day after the murder, appellant became upset when she showed him a news article about O.A., and he said, "It wasn't supposed to happen." In a later conversation, appellant told her "[t]hat the door was kicked in and that there was a shootout."

Two witnesses who were incarcerated with appellant also testified that appellant confessed to them. Kwumane Goodall testified that appellant told him,

> He had went to the house. And when he got there, they had kicked the door in to go in to rob—to rob [Anderson]. And once they got there, [Anderson] must have seen them once they kicked the door in. And [appellant] said, like, [Anderson] was going for something, and [Anderson] told them hold, hold, hold, hold. So they had paused, and then [appellant] said he paused for a minute. And then after that, several pauses for a little minute, and then [appellant] started shooting.

Another inmate, Tyson Knight, testified that appellant "boast[ed] about . . . beat[ing] murder." Appellant told Knight,

> [H]e went to go rob somebody, rob the guy, and he kicked in the door, and he ended up shooting. He said he didn't mean it, but it ended up happening. He didn't mean it. But at first it was, like, it was an individual that he went to rob.

Knight agreed to cooperate with law enforcement and wore a wire during later conversations with appellant. At trial, State Police Special Agent Martin Kriz identified the recording, in which appellant told Knight that the murder weapon "was a Glock." According to Special Agent Kriz, that information had not yet been released to the public.

The jury found appellant guilty on each offense and imposed an aggregate sentence of 2 terms of life imprisonment and 49 years' incarceration. At the December 6, 2021 sentencing hearing, the court denied appellant's oral motion to continue, imposed the jury's sentence, and on December 9 entered a sentencing order. On December 16, the court entered an amended order

granting the Commonwealth's motion to nolle prosse two charges severed from the trial and noting that it had denied appellant's motion for a continuance on December 6.

On January 6, 2022—21 days from the amended sentencing order entered on December 16—appellant filed a "Motion to Stay Convictions." The court scheduled a hearing but did not vacate or suspend the amended sentencing order while appellant's motion was pending.

In his motion, appellant proffered that he learned that a juror had taught Holmes and his brother, which was not disclosed in voir dire. The juror had "no current recall about teaching [Holmes]" but indicated that she realized during the trial that she may have known "someone mentioned in the case." Appellant also alleged that Jefferson had received an undisclosed promise of immunity for a potential misdemeanor charge in exchange for her testimony. In its written response, the Commonwealth denied that Jefferson was granted immunity for any potential charges in exchange for her testimony.

At a hearing on February 11, 2022, the court found that based on Rule 1:1, it did not have jurisdiction to rule on appellant's motion. The court did not enter an order from the hearing. This appeal followed.

ANALYSIS

I. Joinder

Appellant contends that the court erred by joining his case for trial with that of his co-defendant, Hargrove. He asserts that joinder prejudiced him because he could not "confront or cross-examine evidence . . . solely applicable to Hargrove," as Hargrove himself did not testify. Appellant insists that "all the admissions or statements of Hargrove [were] attributed to [appellant] absent his ability to cross-examine or confront Hargrove."

Code § 19.2-262.1 provides that "for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts

or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant." *See also* Rule 3A:10(a). A criminal defendant must demonstrate that a joint trial caused "actual," "legally cognizable prejudice" to his rights. *Allen v. Commonwealth*, 58 Va. App. 618, 623 (2011) (first quoting *Randolph v. Commonwealth*, 24 Va. App. 345, 363 (1997); and then quoting *Zafiro v. United States*, 506 U.S. 534, 541 (1993)). "This occurs only when 'there is a serious risk that a joint trial . . . compromise[d] a specific trial right of one of the defendants' or when the joinder . . . 'prevent[ed] the jury from making a reliable judgment about guilt or innocence.'" *Id*. at 623-24 (quoting *Zafiro*, 506 U.S. at 539). The decision to join cases for trial "involve[s] a case-by-case exercise of the trial court's discretion" and will not be reversed on appeal absent an abuse of that discretion. *Id*. at 622-23.

Appellant does not specify which prong of actual prejudice he is invoking: that a trial right was compromised or that the jury could not make a reliable judgment about guilt or innocence. *See id.* at 623-24. Regardless of which prong applies, appellant's claims of prejudice are unpersuasive. First, he has not established why evidence introduced against Hargrove would have automatically been "attributed to [appellant] absent his ability to cross-examine or confront Hargrove." For example, evidence of Hargrove's arrest for possessing a gun as a felon was not attributed or connected to appellant; to the contrary, the plea and conviction appellant complains of were introduced to prove Hargrove's possession of a gun used in the crimes. Further, the fact that some evidence was introduced only against Hargrove does not constitute actual prejudice to appellant. *See Goodson v. Commonwealth*, 22 Va. App. 61, 71 (1996) ("[A] jury may hear evidence that is material or germane only to the co-defendant's charges . . . ."). This lack of actual prejudice is especially clear when considering the evidence introduced solely against appellant: namely, his multiple confessions and statements to his cousin about his plans to rob Anderson. Ultimately, appellant has not identified any "trial right which was compromised or any basis for concluding the

jury was prevented from making a reliable judgment about his guilt or innocence." *Barnes v. Commonwealth*, 22 Va. App. 406, 413 (1996).

For these reasons, we find that the court did not abuse its discretion by joining appellant's trial with Hargrove's.

## II. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to convict him of attempted robbery because there were no "demands for money or any personal property" and the "home had [not] been ransacked." He proposes an alternative theory that the intruders were merely seeking to harm Anderson, not steal from him. He also challenges the sufficiency of the evidence to establish his participation in the crimes because he claims that the witnesses who testified about his confessions were not credible and the evidence against him was circumstantial.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal[] is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). We must "consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Ele v. Commonwealth*, 70 Va. App. 543, 548 (2019) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (en banc)).

Here, appellant was convicted of, inter alia, attempted robbery, a crime "composed of two elements[:] the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design." *Rogers v. Commonwealth*, 55 Va. App. 20, 24-25 (2009) (quoting *Johnson v. Commonwealth*, 209 Va. 291,

293 (1968)).  "To convict [a defendant] of attempted robbery, the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation."  *Id*. at 25 (alterations in original) (quoting *Pitt v. Commonwealth*, 260 Va. 692, 695 (2000)).

Appellant relies on *Jay v. Commonwealth*, 275 Va. 510, 525 (2008), to support his contention that the Commonwealth did not prove he intended to rob Anderson.  Appellant's reliance is misplaced.  In *Jay*, the defendant's conviction was reversed because, although he confessed that he intended to rob the victim, the Commonwealth did not prove an "overt act."  *Id*. at 523, 526. Here, the evidence established that appellant broke into Anderson's home by force; clearly, an "overt act."  *See id.* at 526.  Appellant's comments about "life-changing money" reflected his intent, as did his multiple confessions after the crime when he admitted he went to Anderson's house to rob him.  Indeed, as in *Rogers*, "[a]ppellant and his companions actually began the robbery, but were foiled in their attempt."  55 Va. App. at 27 (finding sufficient evidence for attempted robbery when the defendants "walked up to the door, holding guns, and attempted to get inside the home by knocking and ringing the doorbell").

Moreover, the record lacks evidence to support appellant's alternative theory that perhaps he was at Anderson's residence for another purpose, such as to harm Anderson.  *See Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022) ("[T]he Commonwealth[] 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011))). Accordingly, we cannot say that the jury's rejection of appellant's alternative theory was plainly wrong.  *See id.*

Appellant also argues that the witnesses who testified against him were not credible.  He asserts that Goodall and Knight were not worthy of belief due to their extensive criminal records

and because they had pending criminal charges when they testified. Appellant further argues that Jefferson was biased against him based on her status as his ex-girlfriend and notes that she did not give a statement to police until after their relationship ended.[4]

The conclusions of the fact finder on issues of witness credibility "may only be disturbed on appeal if this Court finds that [the witness's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299-300 (1984)). The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc).

That the inmate-witnesses were awaiting trial on other charges and had felony records did not render their testimony "so contrary to human experience as to render it unworthy of belief" as a matter of law. *Fisher*, 228 Va. at 300; *see also Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987) (affirming a finding that the testimony of a felon who obtained a benefit for his testimony was not inherently incredible). The jury was aware of these facts, just as it knew that Jefferson was appellant's ex-girlfriend and that she did not report her information about the crime until after their relationship ended. These circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006).

Lastly, appellant argues that the circumstantial evidence used to show his participation in the crimes was flawed and thus insufficient to support his convictions.

---

[4] Appellant also alleges that Jefferson received undisclosed immunity for a false report to law enforcement in exchange for her testimony—an allegation the Commonwealth denied. However, as we discuss in the final section of this opinion, appellant did not raise this claim until after the court lost jurisdiction under Rule 1:1, and so we do not consider it.

First, he argues that the Commonwealth relied on Holmes and Jefferson to connect him to phone numbers used to send text messages attributed to him at trial. Neither number was registered to him or saved in these witnesses' phones under appellant's name. They also testified that appellant lost phones often and his number changed.

Appellant's argument ignores additional circumstantial evidence connecting him to the phone numbers. Many of the text messages from the phone numbers attributed to appellant involve communications about meeting with others, and the Commonwealth presented evidence that he, in fact, appeared at those meetings. Other text messages sent on January 21 between Jefferson, appellant's girlfriend at the time, and a number attributed to appellant contained language such as "I love you." Jefferson also received "selfies" of appellant from that number.

Finally, he argues that "no physical or forensic evidence" placed him "at the scene of the crimes." The lack of such evidence, however, is not dispositive. It is well established that "[c]ircumstantial evidence alone is sufficient to sustain a conviction." *Johnson v. Commonwealth*, 2 Va. App. 598, 604-05 (1986). "[I]n a circumstantial evidence case, . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Id*. (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003).

Accordingly, the evidence was sufficient to prove appellant's participation in the crimes and sustain his convictions.

### III. Motion to Stay Convictions

Appellant contends the court erred by denying his post-sentencing motion to stay his convictions based on two grounds. He argues that he did not have the opportunity to inquire into a juror's impartiality and that the Commonwealth impermissibly withheld a promise of immunity made to Jefferson. The Commonwealth correctly responds, however, that at the time the court heard argument on appellant's motion, the court had lost jurisdiction.

"All final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1(a). "Unless a court vacates or suspends a final order during the twenty-one-day period or some other exception to the general rule applies, the court loses jurisdiction over the case[,] and any action taken by the trial court after the twenty-one-day period has run is a nullity." *Minor v. Commonwealth*, 66 Va. App. 728, 739-40 (2016). "Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1 . . . ." *Sch. Bd. of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 556 (1989) (citations omitted).

Here, appellant filed his motion on the twenty-first day from the date the court entered the amended sentencing order. At that time, the court took no action on the motion except for setting a hearing. Under clearly established case law, the mere setting of a hearing does not toll the 21-day jurisdictional period prescribed in Rule 1:1. *See D'Alessandro v. Commonwealth*, 15 Va. App. 163, 167 (1992) ("In order to toll the time limitations of Rule 1:1[,] . . . it is not sufficient for the trial judge merely to express a desire to consider action[;] . . . rather, the trial judge must issue an order

modifying, vacating[,] or suspending the sentence within twenty-one days of the entry of sentence."). Further, parties cannot confer jurisdiction on a court by agreement. *Weese v. Commonwealth*, 30 Va. App. 484, 493 (1999). Based on Rule 1:1, we hold that the court did not have jurisdiction to consider the motion, and we decline to address those assignments of error.

## CONCLUSION

Appellant fails to establish that the court abused its discretion by joining his case for trial with that of his co-defendant. Taken in the light most favorable to the Commonwealth, the evidence was sufficient to support appellant's convictions, and the court lacked jurisdiction to entertain appellant's motion to stay. For these reasons, we affirm appellant's convictions.

*Affirmed*.